UNITED STATES of America, Appellee,

v.

Dale Thomas JOHNS, Appellant.

No. 93–1236.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1993.

Decided Jan. 25, 1994.

Deborah Ellis, St. Paul, MN, argued, for appellant.

Jeanne Graham, Minneapolis, MN, argued, for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HEANEY, Senior Circuit Judge.

Dale Thomas Johns was convicted of two counts of carnal knowledge of a female under age sixteen, 18 U.S.C. §§ 1153, 2032; one count of rape, 18 U.S.C. §§ 1153, 2031; and five counts of sexual abuse, 18 U.S.C. §§ 1153, 2242(1). He received concurrent sentences of 108 months imprisonment for each count. Johns raises several challenges to his convictions and sentence.

I.

Johns is a member of the Red Lake Band of Ojibwa Indians. He met S.D., an Ojibwa woman, in Minneapolis when he was a chemical dependency counselor and she was seeking help to deal with drinking and other personal problems. S.D. and her daughter

C.D. moved in with Johns, and S.D. and Johns began an intimate relationship. In 1982, when C.D. was twelve, they moved to the Red Lake Indian Reservation, where Johns studied traditional Indian religion and spiritual practices and began conducting doctoring ceremonies in the family residence. Johns assumed the role of father as well as spiritual teacher in the household, and C.D. became his primary assistant when conducting ceremonies. Johns also worked for the Red Lake Social Services Department.

C.D. testified that Johns sexually abused her from 1984 until 1991, when she was age fourteen to twenty-one. C.D. recounted numerous occasions during which Johns engaged in oral, anal, and vaginal intercourse with her. As a parent, Johns controlled her movements and activities both inside and outside the home and was able to command her absence from school or work in order to engage in sex. As a spiritual teacher and medicine man who made C.D. his primary assistant, Johns ensured time alone with C.D. before and after religious ceremonies because according to tradition no one could disturb the medicine man and his assistant during these times. He taught her that events in her life, including the abuse, were ordained by the spirits and that harm would come to her or loved ones if she disrespected the spirits. Johns told C.D. she was his wife, she belonged to him, and one day she was to have his children so he could pass along his pipe and his feathers to them.

S.D. and C.D. moved off the reservation in 1991 after C.D. reported the sexual abuse to her mother. A jury convicted Johns of eight counts of sexual misconduct occurring between December 1985 and August 1991, and Johns appeals.

## II.

### A.

■ Johns first challenges the sufficiency of the evidence to support the five counts of sexual abuse, claiming there was no evidence he placed C.D. in fear. Prosecution under 18 U.S.C. § 2242(1) requires that the defendant

knowingly ... cause[ ] another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping); ....

Johns argues that the "placing in fear" element was not satisfied because, by her own testimony, C.D. states that she feared rejection by the spirits rather than actual harm to herself or others, and that sort of fear is not contemplated by the statute. We disagree with Johns' characterization of C.D.'s testimony. C.D. testified that Johns yelled at her and hit and slapped her, and that she was afraid of what he would do to her. T. 425, 444–45, 461. She also testified Johns taught her that rejection by the spirits would result in harm to her or a loved one, such as illness or inability to have children, and that the way to avoid spiritual rejection was to follow his dictates. T. 406, 425–26, 430, 444–46, 462, 471.

That C.D. attributed some, though not all, of her fears of harm to the spirits rather than directly to Johns simply reflects the fact that Johns cultivated C.D.'s fear and compliance through his position as spiritual teacher and healer and his selection of her as his primary assistant in conducting religious ceremonies. He framed his behavior, and hers, in terms of roles determined by the spirits. For example, when C.D. was sixteen, Johns said he would perform a ceremony to stop his feelings for her. C.D. testified that she

told him not to do it because I was so scared of, I mean, you know, he always would say that we can stop, we can stop. But then right away he would start saying that stuff would happen to me because I wasn't living my role, and I wasn't following the ways, you know, the traditional ways. I mean, God, I was scared. I didn't know what was going to happen. I mean, you don't know what the spirits are going to do.

T. 445–46. His intertwining of purportedly spiritual teachings with sexual abuse of C.D. accentuated, not diminished, the fear C.D. felt.

Johns also fails to acknowledge the fear generated by his dominance of every aspect

of C.D.'s life over a period of years: choosing her clothes, isolating her from friends and her biological father, controlling her activities, pulling her out of school to engage in sex, and constantly changing household rules and becoming enraged when they were not followed.

Apart from mischaracterizing C.D.'s testimony, Johns suggests that the level of fear to which she testified is insufficient under the statute. The statute and the case law indicate otherwise. By expressly excluding fear of death, serious bodily injury, or kidnaping, which are covered in a separate statute, section 2242(1) envisions a lesser degree of fear. Other circuits have upheld convictions under this section based on less egregious and extensive conduct to inspire fear than was present here. *See United States v. Gavin,* 959 F.2d 788 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1017, 122 L.Ed.2d 164 (1993); *United States v. Cherry,* 938 F.2d 748 (7th Cir.1991). The record contains ample evidence to support the jury's conclusion that Johns caused C.D. to engage in sexual acts by placing her in fear.

### B.

■ Johns next contends that the district court abused its discretion in admitting expert testimony regarding long-term familial sexual abuse. He argues that the expert impermissibly vouched for C.D.'s credibility because implicit in the expert's testimony was the opinion that C.D. was telling the truth. A qualified expert may inform the jury of characteristics of sexually abused children and describe the characteristics exhibited by the alleged victim but may not state an opinion that sexual abuse has in fact occurred. *United States v. Whitted,* 11 F.3d 782 (8th Cir.1993); *see also United States v. St. Pierre,* 812 F.2d 417, 419 (8th Cir.1987); *United States v. Azure,* 801 F.2d 336, 340 (8th Cir.1986).

Dr. Sandra Hewitt, a psychologist who specializes in sexual abuse, told the jury about the particular dynamics of long-term familial sexual abuse. She described emotional and psychological traits of abuse victims that often account for behavior such as delay in reporting the abuse or failure to "escape" the abusive situation. Dr. Hewitt testified that she had never met or talked to C.D. or done an evaluation of her. She made no comment on C.D.'s credibility nor did she identify her as a victim of sexual abuse. Dr. Hewitt's testimony was circumscribed so as to educate rather than to usurp the role of the jury, and we find it was properly admitted.

### C.

■ Johns also argues that prosecution for the three counts of carnal knowledge of a female under age sixteen and rape, 18 U.S.C. §§ 2031, 2032, was barred by the five-year statute of limitations. *See* 18 U.S.C. § 3282. The conduct charged in these three counts occurred between December 1, 1985, and December 9, 1986. Under the five-year limitation period, the government would have until December 1, 1990, to indict Johns for the earliest conduct charged in the three counts. Before the five years had elapsed, however, on November 29, 1990, Congress extended the limitation period for child sexual abuse prosecutions that were not already time-barred. 18 U.S.C. § 3509(k). Section 3509(k) permits prosecution of such cases until the child reaches age twenty-five. C.D.'s twenty-fifth birthday, and thus the end of the limitation period, will occur on January 10, 1995. Johns was indicted on July 8, 1992, which falls within the extended limitation period.

■ Johns contends that the statute extending the limitation period for child sexual abuse prosecutions does not apply to prosecutions brought under sections 2031 and 2032 because they were repealed in 1986 and replaced with updated statutes. Prosecutions may be brought under a repealed statute unless the repealing act expressly provides to the contrary. 1 U.S.C. § 109. The law is also settled that extending a limitation period before prosecution is barred does not violate the ex post facto clause, U.S. Const. art. I, § 9, cl. 3. *United States v. Madia,* 955 F.2d 538 (8th Cir.1992). Johns does not dispute that liability incurred under a statute continues beyond its repeal, but he claims that Congress cannot extend the limitation period

for bringing prosecutions under repealed statutes. He cites no authority for this conclusion nor do we find any support for it. The conduct charged in the three counts of carnal knowledge and rape includes only those acts that were not time-barred at the time the limitation period was extended, and the district court did not err in refusing to dismiss those counts.

### D.

■ Finally, Johns argues that the district court improperly excluded testimony about C.D.'s sexual history on the ground of inadequate notice to the prosecution. *See* Fed. R.Evid. 412. He claims that the advancement of his trial date prevented timely notification.

Contrary to Johns' assertions, the district court excluded this evidence on both procedural and substantive grounds. Pretrial Conf.T. 6. Johns sought to introduce evidence that C.D. had in the past consented to sex with persons other than himself. His defense at trial was that he never had sexual contact with C.D. and the only way she could have made such explicit accusations against him was if she had experienced such activity with other persons. We agree with the district court that Johns failed to satisfy the requirements for admitting sexual history evidence. First, Johns raised no issue as to the source of semen or injury, which is a basis for admitting sexual history information under Rule 412(b)(2)(A). Second, Johns did not seek to show prior instances of consensual sex between C.D. and himself, which is a basis for admission under Rule 412(b)(2)(B). In addition there is no basis for concluding that admission of sexual history testimony here is otherwise constitutionally required under Rule 412(b)(1). In light of our conclusion, we need not discuss the procedural ground for excluding the proffered evidence.

### III.

■ Johns argues that the district court improperly calculated his sentence under the sentencing guidelines because it made a two-level upward adjustment in his offense level for abuse of position as a spiritual advisor. The guidelines allow a two-level enhancement "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. No adjustment may be made, however, "if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id.*

The district court made the upward adjustment after concluding that Johns

> abused his position as spiritual advisor in a concrete way by using religious ceremonies as an occasion for sexual activity and justifying his behavior to the victim in spiritual terms. In a more general sense, defendant used his roles as parent and spiritual advisor, and the close relationship with the victim that accompanied those roles, to gain the victim's compliance and assure that she would not reveal the long-term abuse defendant committed against her.

Attachment to Judgment and Commitment Form. Such an adjustment under the sentencing guidelines is entitled to great deference and will not be disturbed unless clearly erroneous. *United States v. Culver,* 929 F.2d 389, 392 (8th Cir.1991). Here the two-level enhancement was justified for the reasons stated by the district court and was permitted because the "abuse of trust" factor was not already included as part of the base offense level or specific offense characteristics for the charged offenses. *See* U.S.S.G. §§ 2A3.1, 3B1.3. The district court did not err in calculating Johns' sentence.

As the record is sufficient to support the convictions and we find no error in the court's rulings, we affirm Johns' convictions and sentence of imprisonment.