# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2138

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Frederick James One Feather, | * | |
| | * | [UNPUBLISHED] |
| Defendant - Appellant. | * | |

_____

Submitted: December 16, 2011
Filed: March 6, 2012

_____

Before LOKEN, BRIGHT and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Frederick James One Feather was convicted by a jury of two counts of sexual abuse by placing the victim in fear in violation of 18 U.S.C. § 2242(1), and one count of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(2). On appeal, One Feather argues the district court[1] erred in denying a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986) and by failing to depart downward at sentencing, and the evidence was not sufficient to support the verdict. We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Court for the District of South Dakota.

# I. BACKGROUND

Shirley White Buffalo started dating One Feather in February 2007, and he moved into her home shortly thereafter. At the time, White Buffalo was the guardian of SWS—her 16-year-old granddaughter who was also living in the house. Between approximately September 2008 and October 2009, One Feather touched SWS five to six times on her "private part" between her legs, four of those times over her clothes. The first time the touching occurred, SWS was 15 years old, and watching television in the living room when One Feather sat beside her, put his hand under her clothes, and put his finger in her vagina. SWS testified that she did not cry out or scream because "I was afraid." The abuse happened four or five more times, and SWS also provided details about the last incident of sexual touching that occurred in White Buffalo's car.

In October 2009, SWS wrote a note to her aunt accusing One Feather of inappropriately touching her. When the aunt received the note, she showed it to White Buffalo. White Buffalo then confronted One Feather about the abuse, showing him the note, and One Feather admitted to sexually touching SWS multiple times. After confronting One Feather, White Buffalo destroyed SWS's note and told SWS not to tell her friends about the touching. White Buffalo was eventually charged with perjury, destruction of evidence, and tampering with witnesses in connection with One Feather's abuse. She reached a plea agreement which included testifying against One Feather.

One Feather was charged under the Major Crimes Act,[2] 18 U.S.C. § 1153, with two counts of sexual abuse by placing the victim in fear, 18 U.S.C. § 2242(1), and one count of sexual contact, 18 U.S.C. § 2244(a)(2).[3]

During voir dire, the government used a preemptory challenge to strike the only Native American member of the jury. One Feather raised a *Batson* challenge, and, after hearing arguments from both sides, the district court denied the challenge. One Feather was then convicted by a jury on all three counts. After his conviction, One Feather moved for judgment of acquittal arguing there was insufficient evidence to prove he placed SWS in fear. The district court denied his motion, and sentenced One Feather to life imprisonment for each count of sexual abuse and 36 months' imprisonment for the abusive sexual contact, with the sentences to be served concurrently. This appeal follows.

## II. DISCUSSION

### A. *Batson* Challenge

One Feather argues that the district court erred in denying his *Batson* challenge after the government struck the only Native American member of the jury. This court reviews the district court's resolution of a *Batson* challenge for clear error. *United States v. Adams*, 604 F.3d 596, 600 (8th Cir. 2010).

---

[2]The sexual abuse occurred on the Standing Rock Sioux Indian Reservation near McLaughlin, South Dakota.

[3]One Feather was also charged with tampering with a witness, 18 U.S.C. § 1512, and failure to register as a sex offender, 18 U.S.C. § 2250(a). The tampering with a witness charge was dropped by the government. The failure to register charge was severed from the trial and dismissed after One Feather's conviction on motion by the government.

The *Batson* inquiry involves a three step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Id.* (quotation omitted).

During voir dire a prospective juror indicated that her father was Native American. The prospective juror also completed a standard supplemental juror questionnaire where she noted that she was a professor with a doctorate in philosophy, and she had a brother who was convicted of misprision. The government used a preemptory challenge to strike the prospective juror. One Feather then challenged the strike under *Batson*.

During a bench conference, the district court noted that the prospective juror was Native American and asked the government for a race-neutral reason for the strike. The government argued that the prospective juror had a brother convicted of misprision, and stated "[i]f you think about this case a little bit, that [White Buffalo]—her crime is very related to misprision. She failed to report, didn't report the crime involving this." The government also expressed concern about the prospective juror's educational background. The district court then found that the government's reasoning was race neutral and rejected the *Batson* challenge.

In *United States v. Wiggins*, the defendant was charged with conspiring to distribute cocaine, and the government struck a prospective juror whose brother had been convicted of cocaine possession. 104 F.3d 174, 176 (8th Cir. 1997). The district court found no showing that the government's reason was pretextual and

denied the *Batson* claim. *Id.* We upheld the district court's decision on the grounds that "the incarceration of a close family member is a legitimate race-neutral reason justifying the use of a peremptory strike." *Id.* (quotation omitted).

Misprision is the "[c]oncealment or nondisclosure of a serious crime by one who did not participate in the crime." *Black's Law Dictionary* 1090–91 (9th ed. 2009). While White Buffalo was not charged with misprision, she was charged with perjury, destruction of evidence, and tampering with witnesses to conceal One Feather's abuse. White Buffalo's conduct was sufficiently similar to the brother of the prospective juror's conviction to be considered a legitimate race-neutral rationale for the preemptory strike. While some judges might not permit such a reason to sustain a preemptory strike, there is nothing in this record to overcome the "great deference" we give the district court's factual findings, *see United States v. Payton*, 636 F.3d 1027, 1039 (8th Cir. 2011). Therefore, we conclude the district court's ruling was not clearly erroneous.

## B. Sufficiency of the Evidence

One Feather also argues there was insufficient evidence to prove beyond a reasonable doubt that he threatened or placed SWS in fear. We review de novo the sufficiency of the evidence presented at trial, viewing the evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences in the government's favor. *United States v. Hoffman*, 626 F.3d 993, 995 (8th Cir. 2010). A guilty verdict should not be lightly overturned and we will reverse "only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." *Id.* (quotation omitted).

Under 18 U.S.C. § 2242(1) the prosecution must prove that the defendant "knowingly . . . causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other

person in fear that any person will be subjected to death, serious bodily injury, or kidnapping) . . . ."

SWS testified that she was afraid on several occasions:

Q:    You don't stop him or you don't yell or you don't scream?  Why don't you do those things?

A:    Because I was afraid then.

. . .

Q.    Okay.  Why didn't you say something to somebody?  Why didn't you tell your grandma that Snow[4] had put his finger inside you?

A:    Because I was afraid.

The definition of "fear" is very broad.  *United States v.* Castillo, 140 F.3d 874, 885 (10th Cir. 1998); *see also United States v. Johns*, 15 F.3d 740, 742 (8th Cir. 1994).  While SWS was not explicit in her response about who caused her to be afraid, a reasonable inference from her statements is that One Feather was the source of her fear.  Because we view the evidence in the light most favorable to the jury's verdict and draw all reasonable inferences in the government's favor, this evidence alone is sufficient to support the verdict.

## C.  Downward Departure

Finally, One Feather argues that the district court erred by not granting a downward departure for an "extraordinary physical impairment" under U.S.S.G. § 5H1.4.  Under the advisory guidelines, we generally will not review the district

---

[4]Snow is a nickname for One Feather.

court's refusal to grant a downward departure "unless the district court had an unconstitutional motive or erroneously thought that it was without authority to grant the departure." *United States v. Heath*, 624 F.3d 884, 888 (8th Cir. 2010) (quotation omitted).

One Feather requested a downward departure under U.S.S.G. § 5H1.4 in his objections to the Presentence Investigation Report (PSR). At sentencing, the district court noted that he had reviewed the PSR, as well as the objections prepared by One Feather's attorney. Later in the hearing, the district court also acknowledged One Feather's physical and mental impairments, and then overruled his objection.

The sentencing transcript demonstrates that the district court was aware of its authority to grant a downward departure under U.S.S.G. § 5H1.4. There is also nothing in the record to indicate that the district court had an unconstitutional motive, and therefore the district court's decision to decline to depart downward is not reversible error.

## III. CONCLUSION

For the foregoing reasons, we affirm One Feather's conviction and sentence.

_____