# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-3483

_____

United States of America

*Plaintiff - Appellee*

v.

Denny Johnson, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: March 10, 2017
Filed: June 29, 2017
[Published]

_____

Before WOLLMAN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following a jury trial, Denny Johnson was sentenced to thirty years in prison for physically assaulting and raping his estranged wife. Johnson now challenges four

of the district court's[1] evidentiary rulings at trial, as well as the court's application of sentencing enhancements for obstruction of justice and vulnerable victim. We affirm.

## I. Background

Johnson and D.M. were married nearly seven years and had three young children together when D.M. filed for divorce in August 2013. D.M. and the children moved out of the couple's home in Kenel, South Dakota, and into her parents' home in nearby Dupree.[2] Seeking to mend her marriage, in September D.M. moved back in with Johnson, leaving the children with her parents. The two stayed together through the fall, but in early December D.M. informed Johnson that she had decided to proceed with the divorce. D.M. continued living with Johnson, although she began sleeping in a separate bedroom.

D.M. alleged that, between December 1, 2013 and January 10, 2014, Johnson continually entered her bedroom while she tried to sleep and raped her both vaginally and anally. If she resisted, D.M. claimed that Johnson would strangle her, squeezing his forearm around her neck until her vision blurred. D.M. would later testify that during those weeks she felt trapped, too frightened to call out for help, and too weak to regain her car keys, cell phone, and money from Johnson's control.

D.M. attempted escape in late December 2013. As she opened the front door to the house, Johnson slammed the door shut and pulled her back inside by her jacket.

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

[2]Kenel and Dupree are both communities located on Native American Reservations in South Dakota. Kenel is situated alongside the Missouri River on the eastern boundary of the Standing Rock Reservation, and Dupree lies in the western region of the Cheyenne River Reservation.

He then threw D.M. to the floor, kicked her repeatedly in an area of her back that had previously been injured, struck her in the forehead with metal, used a knife to cut off all the clothes from her body, and instructed her to kill herself in front of him. When she refused, Johnson urinated on her naked body. He then forced her into the shower, turned on cold water, and began pouring powdered bathroom cleaner, dishwashing soap, body wash, shampoo, bleach, and dirty mop water on her. He held up a mirror to D.M. and said, "Look how ugly you look when you cry," before shattering the mirror in the tub. When Johnson's cousins arrived at the house, Johnson forced D.M. to stay in the bedroom and told her he would kill her if she cried out for help. After the cousins left, Johnson raped D.M., forcibly contorting her body to reenact the positions he claimed he had experienced with other women.

On January 10, 2014, D.M. and Johnson made a deal: she would give him her 1997 Chevrolet Blazer in exchange for him allowing her to leave. After signing over the title, D.M. immediately ran outside, got into her Chevrolet Cavalier, and drove to a gas station to call 911 and report Johnson. D.M. prepared a written statement for law enforcement summarizing much of what she would later testify to at trial. Johnson was indicted in the U.S. District Court for the District of South Dakota and charged with five counts of aggravated sexual abuse, kidnapping, assault with a dangerous weapon, assault of a spouse by strangulation, and domestic assault by a habitual offender.

The charges in the indictment related solely to the incidents that allegedly occurred in December 2013 and January 2014. At trial, evidence was also presented that Johnson had two tribal court convictions for physically assaulting D.M. The first conviction arose from a conflict between Johnson and D.M. in April 2004 in which Johnson ripped out parts of D.M.'s hair, leaving a bald spot and visibly swollen scalp. Johnson also sat on D.M.'s stomach and pushed on her chest because he had heard that doing CPR on a living person stops the heart. When their two-year-old son tried to help his mother, Johnson hit him in the stomach, knocking the child to the floor.

Johnson subsequently pled guilty in the Cheyenne River Sioux Tribal Court, Eagle Butte, to two counts of aggravated assault, domestic violence, and endangering the welfare of a child. The second conviction arose in December 2006, around two weeks before the couple's wedding. Johnson came home intoxicated, kicked in the bedroom door, and kicked over the Christmas tree. He then slapped D.M. in the face, leaving her cheek swollen. She took her children and fled to the neighbors' house to call the police. For this incident, Johnson pled guilty to simple assault and domestic violence.

The government also offered expert testimony from Kristine Heeren-Graber, the executive director of the South Dakota Network Against Family Violence and Sexual Assault. Heeren-Graber testified about the common emotional and behavioral characteristics that domestic violence victims often display. Her testimony was based on the Duluth Model, which she described as a scientific study highlighting the power and control that propels abusive domestic relationships (the "power-and-control wheel"). She explained that the power-and-control wheel represents the various attributes of a physically and/or sexually abusive relationship. In the middle, there is power and control, surrounded by terms describing how abusers use power and control to trap their victims in violence, including intimidation, isolation, denial, blame, and economic abuse. Heeren-Graber also explained the "cycle of violence," which divides domestic abuse into three stages. The cycle begins with tension-building between the abuser and victim, followed by an explosion of violence, and ending with a honeymoon phase that gives the victim hope until the tension begins stewing once more. Finally, Heeren-Graber discussed typical victim responses to domestic violence, including how women often remain in abusive relationships without reporting the abuse to authorities. Throughout her testimony, Heeren-Graber did not discuss any emotional or behavioral characteristics specific to D.M. and offered no opinion as to D.M.'s credibility or whether D.M. had in fact been sexually abused.

Johnson attempted to rebut the government's expert testimony with evidence of D.M.'s prior bad acts. In a notice filed before the trial began, Johnson stated his intent to introduce testimony that (1) in October 2013 D.M. assaulted Johnson and trashed his home, (2) in November 2013 D.M. punched Johnson in the jaw resulting in Johnson going to the hospital, and (3) on various other dates witnesses have seen D.M. physically abuse Johnson. In response, the government pointed to the facts that D.M. was not on trial and was never convicted of any of the alleged prior bad acts. The government argued that, under Federal Rules of Evidence 401 and 403, introducing evidence of D.M.'s prior acts would only confuse the issues and waste the court's time. The district court granted the government's motion to exclude the evidence on the ground that admitting the evidence would create mini-trials because, if Johnson offered evidence of D.M.'s prior misconduct, the government would be allowed to offer rebuttal evidence of Johnson's same aggressive trait. See Fed. R. Evid. 404(a)(2)(B).

The jury found Johnson guilty of two counts of aggravated sexual abuse, 18 U.S.C. §§ 1153, 2241(a); one count of assault with a dangerous weapon, 18 U.S.C. §§ 1153, 113(a)(3); one count of simple assault, 18 U.S.C. §§ 1153, 113(a)(5); and one count of domestic assault by a habitual offender, 18 U.S.C. § 117.[3] The presentence report determined that Johnson's base offense level under the Sentencing Guidelines was 30. The report recommended increasing the base level by ten because (1) the offense involved rape by the use of force, see USSG § 2A3.1(b)(1); (2) Johnson knew or should have known that D.M. was a vulnerable victim, see USSG § 3A1.1(b)(1); (3) D.M. was physically restrained in the course of the offense, see USSG § 3A1.3; and (4) Johnson willfully obstructed or impeded justice, see USSG § 3C1.1. The district court overruled Johnson's objections and imposed all four offense level enhancements.

---

[3]The jury found Johnson not guilty of any crime alleged to have occurred prior to December 29, 2013.

Based on a total offense level of 40 and a criminal history category of I, Johnson's Sentencing Guidelines range was 292 to 365 months imprisonment. The district court imposed individual sentences for each of the convictions to be served concurrently, resulting in a total effective sentence of 360 months followed by five years of supervised release.

## II. The Evidentiary Rulings

We first consider Johnson's appeal of four of the district court's evidentiary rulings. "Evidentiary rulings are reviewed for abuse of discretion, and we afford deference to the district judge who saw and heard the evidence." United States v. Espinosa, 585 F.3d 418, 430 (8th Cir. 2009) (internal quotation marks omitted). We will reverse "only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Picardi, 739 F.3d 1118, 1124 (8th Cir. 2014) (internal quotation marks omitted). We will not reverse a harmless error. United States v. Missouri, 535 F.3d 844, 848 (8th Cir. 2008) (citing Fed. R. Civ. P. 61).

## A. Expert Testimony of Kristine Heeren-Graber

The district court rejected Johnson's request for a Daubert hearing concerning Heeren-Graber's qualifications to testify as an expert. See Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). Johnson argues that a Daubert hearing would have established that Heeren-Graber had insufficient knowledge to testify about the Duluth Model and the cycle of domestic violence. He further asserts that Heeren-Graber's testimony was not necessary to help the jury understand the evidence, and that the testimony merely vouched for D.M.'s credibility. Finally, Johnson argues in the alternative that the testimony was irrelevant and unduly prejudicial under Federal Rules of Evidence 401 and 403.

Under Federal Rule of Evidence 702, expert testimony is admissible if the expert's "knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter." United States v. Molina, 172 F.3d 1048, 1056 (8th Cir. 1999). The district court enjoys "broad latitude" in determining the reliability of expert testimony, Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 142 (1999), and "[t]here is no requirement that the [d]istrict [c]ourt always hold a Daubert hearing prior to qualifying an expert witness," United States v. Kenyon, 481 F.3d 1054, 1061 (8th Cir. 2007) (first alteration in original) (internal quotation marks omitted). Indeed, when the district court is satisfied that the testimony is "reasonably based on [the expert's] education, training, and experience, the court does not abuse its discretion by admitting the testimony without a preliminary hearing." Id.

After careful review of the record, we conclude that the district court did not err in admitting the testimony of Heeren-Graber without a Daubert hearing. Heeren-Graber has nearly thirty years of experience as a licensed social worker specializing in domestic violence and sexual assault. The trial transcript shows that, contrary to Johnson's suggestion, Heeren-Graber has a wealth of knowledge about the Duluth Model and the cycle of violence. Through detailed answers on direct examination, Heeren-Graber articulated the three steps in the cycle of violence—tension-building, explosion, and honeymoon—and described how the cycle often worsens over time in most abusive relationships. She further described the power-and-control wheel component of the Duluth Model, addressing eight distinct methods in which abusers use power and control to harm their victims.

In fact, the only questions Heeren-Graber was unable to answer about the Duluth Model related to aspects of the Model that have nothing to do with its substance or validity. For instance, on cross-examination she was unable to recall every individual scientist who conducted the study, the precise year the study was published, and the entity that funded the study. Lack of familiarity with such

-7-

incidental details, without more, does not establish that Heeren-Graber did not qualify as an expert, particularly in light of her education and experience in the field. See Fox v. Dannenberg, 906 F.2d 1253, 1256 (8th Cir. 1990) ("[A]n individual can qualify as an expert where [she] possesses sufficient knowledge gained from practical experience, even though [she] may lack academic qualifications in the particular field of expertise."). We therefore conclude that the district court did not abuse its discretion in determining that Heeren-Graber's testimony rested on a reliable foundation.

Johnson also claims that Heeren-Graber's testimony was not necessary to help the jury understand the evidence—and therefore not admissible under Federal Rule of Evidence 702—because Heeren-Graber only testified to general characteristics of abuse victims and did not tailor her testimony to D.M.'s circumstances. As we have previously explained, "when determining the admissibility of expert testimony, the relevant inquiry is whether [the expert's] testimony would be 'helpful' to the jury's understanding of the evidence." United States v. Johnson, 28 F.3d 1487, 1496-97 (8th Cir. 1994). In United States v. Kirkie, we upheld the admission of expert testimony regarding the general characteristics that sexually abused children exhibit. 261 F.3d 761, 766 (8th Cir. 2001). The trial court in Kirkie found that the testimony was "helpful to the jury, without usurping the jury's role of assessing the victim's credibility and whether the abuse actually occurred." Id. Likewise, in United States v. Johns this court found no error in admitting expert testimony about the "emotional and psychological traits of abuse victims that often account for behavior such as delay in reporting the abuse or failure to 'escape' the abusive situation." 15 F.3d 740, 743 (8th Cir. 1994); see also United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993) ("[A] qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits.").

While these cases involved sexual abuse of children, we see no reason why similar testimony should not also be considered helpful to the jury in cases where, as

here, the victim of sexual abuse is an adult. Regardless of the victim's age, expert testimony about how individuals generally react to sexual abuse—such as not reporting the abuse and not attempting to escape from the abuser—helps jurors evaluate the alleged victim's behavior. See, e.g., Kirkie, 261 F.3d at 766. So long as the expert does not impermissibly "vouch" for the victim by, for example, diagnosing the victim with sexual abuse or expressing an opinion that sexual abuse has in fact occurred, the testimony does not necessarily invade the jury's exclusive responsibility to determine the credibility of witnesses. See Whitted, 11 F.3d at 785-86.

Here, as in Kirkie, the expert testimony about the general characteristics of victims of sexual abuse "left open the possibility that the victim's testimony could be truthful or not." 261 F.3d at 766. Heeren-Graber did not express any opinion on the truthfulness of D.M.'s testimony and did not suggest that D.M.'s behavior is consistent with the behavior of victims of domestic physical and sexual assault in general. Indeed, Heeren-Graber testified that she had never met D.M.; her expert testimony merely imparted general knowledge which the jury could then use in evaluating the charges against Johnson. We therefore find no abuse of discretion in allowing the testimony under Federal Rule of Evidence 702. See Johns, 15 F.3d at 743 (allowing generalized testimony of an expert who had not met the victim and who made no comment as to the victim's credibility).

For the same reasons, Johnson's argument that Heeren-Graber's testimony was irrelevant is unsupported by the record. The testimony was relevant because it helped the jury assess the credibility of D.M., whose allegations formed the basis of the entire indictment. See Fed. R. Evid. 401.

Likewise, the expert testimony did not mislead the jury, confuse the issues, or otherwise unfairly prejudice Johnson in violation of Federal Rule of Evidence 403. As already discussed, Heeren-Graber did not testify as to D.M.'s behavior and did not

opine as to whether D.M. had in fact been abused. The remoteness of the testimony from the specific facts of the case makes it is highly unlikely that the testimony "influence[d] the jury to decide the case on an improper basis." United States v. Wipf, 397 F.3d 632, 636 (8th Cir. 2005) (internal quotation marks omitted). Moreover, the testimony was not misleading or confusing. Heeren-Graber made it quite clear that she had no firsthand knowledge of D.M.'s particular circumstances; she merely gave a straightforward account of relevant background information based on her own knowledge and experience. Accordingly, the district court did not abuse its discretion by refusing to exclude the testimony under Rule 403.

## B. Johnson's Previous Convictions

Johnson next argues that the district court improperly overruled his objection to D.M.'s testimony about the facts underlying his prior tribal court convictions. The district court allowed the testimony under Federal Rule of Evidence 404(b) for purposes of proving motive, intent, knowledge, absence of mistake, or lack of accident.

Johnson's objection is twofold. First, although Johnson admits that the prior convictions were relevant to Count IX of the indictment, which charged Johnson with committing domestic assault by a habitual offender in violation of 18 U.S.C. § 117, he claims that the conduct giving rise to those convictions was irrelevant. See Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence . . . ."). Second, Johnson argues that the testimony should have been excluded under Federal Rules of Evidence 404(b) and 403 as prohibited character evidence that caused unfair prejudice.

We reject Johnson's argument that the facts behind his prior convictions were irrelevant to the government's case under 18 U.S.C. § 117. In United States v.

Drapeau, we concluded that testimony about the facts underlying a defendant's prior tribal court convictions was relevant to prove, at a minimum, two of the three elements necessary to secure a conviction under 18 U.S.C. § 117. 827 F.3d 773, 776 (8th Cir. 2016) (finding the victim's testimony "relevant to prove that the convictions had occurred—the first element—and that she was a 'spouse or intimate partner'—the third element"). Johnson makes no attempt to explain why Drapeau should not impact our analysis of essentially the same relevancy issue in this case. Accordingly, we hold that the district court did not abuse its discretion by finding D.M.'s testimony relevant under Rule 401.

We also conclude that the district court did not abuse its discretion by admitting D.M.'s testimony under Federal Rule of Evidence 404(b). Rule 404(b) bars a defendant's prior crimes or bad acts from admission as character evidence but allows such evidence to prove factors including motive, opportunity, intent, preparation, plan, or knowledge. We have described Rule 404(b) as "a rule of inclusion, meaning that evidence offered for permissible purposes is presumed admissible absent a contrary determination." United States v. Walker, 428 F.3d 1165, 1169 (8th Cir. 2005). We "will reverse only when the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct." Id. There are four elements governing admissibility under Rule 404(b): the evidence "must (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value." United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006) (internal quotation marks omitted).

First, D.M.'s testimony regarding Johnson's prior assault convictions was relevant to the material issue of whether Johnson had the requisite intent to commit the assaults charged in this case. By pleading not guilty, Johnson placed every

element of the charges brought against him at issue.  See United States v. Mothershed, 859 F.2d 585, 589 (8th Cir. 1988); see also Walker, 428 F.3d at 1170 ("The mere fact that [the defendant] did not actively dispute motive or intent did not preclude the government from offering otherwise admissible evidence as to these factors."). "Evidence of past crimes can be probative of a defendant's intent to commit a similar act." United States v. Littlewind, 595 F.3d 876, 881 (8th Cir. 2010). As in other cases where this court has found evidence of prior acts relevant to the defendant's intent, here Johnson's prior crimes against D.M. help explain the history of Johnson and D.M.'s relationship, from which Johnson's intent to commit violence upon D.M. is derived.  See United States v. Farish, 535 F.3d 815, 819-20 (8th Cir. 2008); Walker, 428 F.3d at 1170.  The first Rule 404(b) element is therefore satisfied.

Second, Johnson's prior convictions for domestic violence are similar in kind to the crimes charged in the present case, which arise from allegations that Johnson physically and sexually abused D.M., his estranged wife.  As to temporal proximity, "there is no fixed period within which the prior acts must have occurred." United States v. Baker, 82 F.3d 273, 276 (8th Cir. 1996).  We have allowed admission under Rule 404(b) for acts committed up to thirteen years before the crime charged.  See United States v. Engleman, 648 F.2d 473, 479 (8th Cir. 1981).  Johnson's convictions—which took place in 2004 and 2006, eight to ten years before Johnson was indicted in this case—are therefore sufficiently close in time to the crimes charged in this case.

Third, D.M.'s testimony by itself was sufficient evidence to support a finding that Johnson committed the conduct underlying his prior convictions.  See Johnson, 439 F.3d at 953 (finding a single witness's testimony regarding previous drug transactions between the witness and the defendant sufficient evidence to support the jury's finding that the defendant committed the prior acts of drug dealing).  As the victim of both prior crimes, D.M. had firsthand knowledge of the circumstances leading to the convictions.  Although other parts of D.M.'s testimony may have hurt her reliability, "we generally leave credibility determinations to the jury." Id.

Finally, D.M.'s testimony about the underlying facts of Johnson's prior convictions did not prejudice Johnson to such an extent that reversal is warranted. In Drapeau, we concluded that the probative value of a victim's testimony regarding the facts underlying a defendant's prior convictions was not substantially outweighed by the testimony's prejudicial effect. 827 F.3d at 777. While D.M.'s descriptions of Johnson's prior crimes may have prejudiced Johnson, their probative value increased because the same victim (D.M.) was involved in both of the previous convictions as well as in this case. See Walker, 428 F.3d at 1170; Littlewind, 595 F.3d at 881 ("[T]he relative probative value of prior crime evidence is increased by the fact that both offenses were associated with the same victim." (internal quotation marks omitted)). Moreover, the district court gave two limiting instructions during trial, and the jury instructions also reminded the jury that it cannot convict Johnson simply because he has committed similar acts in the past. See Farish, 535 F.3d at 820 (noting that limiting instructions diminish the risk of unfair prejudice). We therefore reject Johnson's position that the prejudicial impact of D.M.'s testimony substantially outweighed its probative value. See Johnson, 439 F.3d at 952.

After carefully considering the elements of Rule 404(b), we conclude that D.M.'s testimony as to the facts underlying Johnson's prior convictions was not clearly irrelevant to the case and was not "introduced solely to show [Johnson's] propensity" to commit crimes. See Walker, 428 F.3d at 1169. The district court's evidentiary ruling is therefore affirmed.

## C. D.M.'s Prior Bad Acts

Johnson next challenges the district court's exclusion of evidence that D.M. assaulted Johnson on multiple occasions prior to December 2013. Johnson argues that the ruling prevented him from effectively cross-examining D.M. in violation of the Sixth Amendment Confrontation Clause. He also claims that the evidence was admissible under Rule 404(b) as interpreted by this court in United States v. Gregg, 451 F.3d 930 (8th Cir. 2006). We address each argument in turn.

"District courts retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." United States v. Dale, 614 F.3d 942, 956 (8th Cir. 2010) (second alteration in original) (internal quotation marks omitted). When using the Confrontation Clause to challenge a limitation on cross-examination, "the defendant must establish that a reasonable jury might have received a *significantly* different impression of a witness's credibility had counsel been permitted to pursue the proposed line of cross-examination." United States v. Petters, 663 F.3d 375, 382 (8th Cir. 2011) (internal quotation marks omitted). We will affirm "unless there has been a clear abuse of discretion and a showing of prejudice to the defendant." Id.

Through cross-examination of D.M., Johnson was able to establish that (1) D.M. had no signs of injury when she spoke with law enforcement after fleeing Johnson's house; (2) in D.M.'s written statement and in her initial conversations with police, D.M. did not claim that Johnson had raped her or forced her to engage in sexual acts; and (3) D.M. had previously lied by claiming that Johnson would not allow her to go to work the day after one of his alleged assaults when timesheets from her workplace confirmed that she did in fact work that day. Johnson does not explain why evidence of D.M.'s alleged prior assaults—which Johnson concedes took place one to two months before the time period for which Johnson was on trial—would have caused jurors to form a "significantly different impression" of D.M. or her credibility. Id. Rather, Johnson had a "full and fair opportunity to probe and expose . . . infirmities through cross-examination," and excluding evidence of D.M.'s unrelated prior bad acts did not "effectively emasculate the right of cross-examination itself." United States v. Sigillito, 759 F.3d 913, 937-38 (8th Cir. 2014) (alteration in original) (internal quotation marks omitted). We therefore reject Johnson's Confrontation Clause argument.

-14-

Johnson has also failed to establish that the evidence should have been admitted under Rule 404(b) to prove Johnson's state of mind. As discussed above, Rule 404(b) allows evidence of prior bad acts to show, among other things, "motive, opportunity, intent, preparation, plan, [or] knowledge." While this rule is ordinarily invoked by the prosecution, in <u>Gregg</u> we explained that a defendant may use Rule 404(b) to introduce evidence of the victim's specific bad acts to prove the defendant's state of mind. 451 F.3d at 935; <u>see also</u> <u>United States v. Bordeaux</u>, 570 F.3d 1041, 1049 (8th Cir. 2009) ("[E]vidence of prior bad acts of the victim are admissible under Rule 404(b) to establish the defendant's state of mind and the reasonableness of the defendant's use of force.").

Johnson's invocation of Rule 404(b) is misplaced. The defendant in <u>Gregg</u> sought to introduce specific violent acts by the victim in order to demonstrate the defendant's subjective fear of the victim at the time of the offense conduct. 451 F.3d at 935. Indeed, in every case cited in <u>Gregg</u>'s discussion of Rule 404(b), the defendant used evidence of the victim's specific violent acts in order to corroborate the defendant's position that he reasonably feared imminent injury from the victim. <u>See</u> <u>United States v. Milk</u>, 447 F.3d 593, 600 (8th Cir. 2006); <u>United States v. Saenz</u>, 179 F.3d 686, 688 (9th Cir. 1999); <u>Virgin Islands v. Carino</u>, 631 F.2d 225, 230 (3d Cir. 1980).[4] Johnson, however, has not alleged that he feared D.M. or that he acted in self-defense. To the contrary, Johnson denied D.M.'s allegations and argued that she was a "scorned woman" bringing false accusations due to jealousy over Johnson's new girlfriend. It is unclear why Johnson would need to prove his state of mind during events that, by Johnson's account, never occurred. We therefore conclude that the district court did not abuse its discretion in failing to admit the evidence under Rule 404(b).

---

[4]The court in <u>Gregg</u> also cited <u>United States v. Rocha</u>, 916 F.2d 219, 241 (5th Cir. 1990), but that case did not involve evidence of a victim's prior bad acts and is therefore inapposite.

## D. D.M.'s Written Statement

Johnson's final evidentiary challenge arises from the introduction of a statement that D.M. prepared for law enforcement in January 2014, after she escaped from Johnson. The two-page, handwritten document explained many of the same incidents that D.M. later testified to at trial. Namely, D.M. wrote that Johnson had tried to make D.M. kill herself with a knife, used the knife to cut off her clothes, urinated on her, made her go to the shower where he threw a mirror at her, and threatened to kill her if she called for help. The statement also contradicted parts of D.M.'s trial testimony. For example, the statement claimed that Johnson would not allow D.M. to go to work the day after one of his alleged assaults, when at trial D.M. admitted that she did in fact go to work that day. Additionally, D.M. did not claim in the written statement that she had ever been raped or sexually assaulted by Johnson.

Over Johnson's objection the district court admitted the written statement as an exhibit. Johnson argues that while D.M. was properly allowed to testify about the written statement, admitting the statement into evidence unfairly prejudiced Johnson because it allowed D.M. to bolster her own testimony.

We decline to address the merits of Johnson's objection. We instead find that, regardless of whether the district court erred by allowing the written statement as an exhibit, Johnson's substantial rights were not affected and therefore reversal is unwarranted. See United States v. Marrowbone, 211 F.3d 452, 455 (8th Cir. 2000) (evidentiary rulings that do not affect substantial rights are not reversed). Although Johnson argues that the statement bolstered the impact of D.M.'s testimony, the writing in fact supports Johnson's defense of the aggravated sexual abuse charges, as the statement does not contain a single allegation that Johnson raped D.M. Further, on cross-examination Johnson effectively used the written statement to raise doubt about D.M.'s credibility, including eliciting an admission by D.M. that she had

-16-

lied in the written statement by claiming that Johnson would not allow her to go to work the day after one of his alleged assaults.

Thus, while parts of the written statement indeed corroborate D.M.'s testimony, we conclude that any error in admitting the statement into evidence was harmless. The district court's evidentiary ruling on this issue is therefore affirmed.

## III. The Sentencing Enhancements

The district court enhanced Johnson's base offense level for obstruction of justice, USSG § 3C1.1, and vulnerable victim, USSG § 3A1.1(b)(1). Johnson claims the court erroneously applied these enhancements, resulting in an incorrect calculation of his Guidelines range. We review de novo "[t]he legal conclusions a district court reaches in order to apply an enhancement for purposes of calculating an advisory [G]uidelines range . . . , while the factual findings underpinning the enhancement are reviewed for clear error." United States v. Septon, 557 F.3d 934, 936 (8th Cir. 2009).

## A. Obstruction of Justice

Under section 3C1.1 of the Sentencing Guidelines, two levels are added to a defendant's base offense level if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

Conduct that occurs before the investigation begins may constitute obstruction of justice "if the conduct was purposefully calculated, and likely, to thwart the

investigation or prosecution of the offense of conviction." USSG § 3C1.1, comment. (n.1). A defendant qualifies for the obstruction-of-justice enhancement if, for instance, he "threaten[s] the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction." USSG § 3C1.1, comment. (n.4(K)).

The district court concluded that Johnson obstructed justice before the investigation began by threatening D.M. with a knife while telling her he would kill her if she called the police or otherwise reached out for help. Johnson objected, arguing that conduct occurring *before the offense is completed* cannot be considered in a court's determination of the obstruction-of-justice enhancement. He claimed that his threats to D.M. were part of his offense conduct and therefore cannot be used to determine that Johnson obstructed justice under the Guidelines.

We are unaware of any authority for Johnson's interpretation of the obstruction-of-justice enhancement. He cites United States v. Stapleton, which held that an enhancement for obstructing justice may be applied based on the defendant's conduct at resentencing. 316 F.3d 754, 758 (8th Cir. 2003). But by definition resentencing occurs *after* the offense is completed, and Stapleton therefore has no bearing on whether the enhancement can be based on conduct occurring *before* the offense conduct becomes final.

In the absence of authority limiting the obstruction-of-justice enhancement to conduct occurring after the completed offense, we find that Johnson's threats to D.M. are precisely what the Guildelines contemplate as "an attempt to prevent [D.M.] from reporting the conduct constituting the offense of conviction." USSG § 3C1.1, comment. (n.4(K)). Accordingly, the district court's enhancement for obstruction of justice is affirmed.

-18-

## B. Vulnerable Victim

Section 3A1.1(b)(1) prescribes a two-level sentencing enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." A "vulnerable victim" is one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1, comment. (n.2). This enhancement is not meant to apply "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." Id.

The district court found that D.M. was particularly susceptible to Johnson's assaults because Johnson had subjected her to further assaults by removing her clothing with a knife, and because the assaults took place in an isolated area during the winter months of South Dakota, which prevented her from escaping without risk of freezing or frostbite. Johnson argues that these factors reflect the same conduct that led the district court to enhance his sentence for committing rape by the use of force under USSG § 2A3.1(b)(1), and therefore the court engaged in "double counting" by applying the vulnerable victim enhancement. We disagree.

"Impermissible double counting occurs when *precisely the same aspect of a defendant's conduct* factors into his sentence in two separate ways." United States v. Strong, 826 F.3d 1109, 1116 (8th Cir. 2016) (emphasis added) (internal quotation marks omitted). Here, giving "due deference to the district court's application of the [G]uidelines to the facts," we conclude that the court did not consider "precisely the same" conduct when applying sentencing enhancements for vulnerable victim and rape by force. See id. While the fact that Johnson used a knife to cut off D.M.'s clothes may reasonably be considered part of the conduct underlying the rape by force enhancement, the isolated location of the abuse and risk of freezing upon attempting escape are clearly related only the vulnerable victim analysis.

-19-

Because the vulnerable victim enhancement was based on factors separate and distinct from the other sentencing enhancements, the district court did not commit unlawful double counting.  See id.  The vulnerable victim enhancement is therefore affirmed.

## IV.  Conclusion

For these reasons, we reject Johnson's challenges to the district court's evidentiary rulings and its application of sentencing enhancements for obstruction of justice and vulnerable victim.  The district court is affirmed in all respects.

_____