# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1584
_____

United States of America

*Plaintiff - Appellee*

v.

Jerrell West

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 16, 2022
Filed: April 25, 2023
[Unpublished]

_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.

_____

PER CURIAM.

A jury convicted Jerrell West of interstate travel with intent of engaging in illicit sexual conduct with a minor. On appeal, West argues that the district court[1]

---

[1]The Honorable Rodney W. Sippel, then Chief Judge, now United States District Judge for the Eastern District of Missouri.

abused its discretion by allowing an expert witness to testify about the typical behaviors of child sex-abuse victims. Because the expert witness only discussed the typical behaviors of child sex-abuse victims and did not opine about the minor's truthfulness, we hold that the district court did not abuse its discretion in admitting the expert's testimony. Accordingly, we affirm the district court's judgment.

## I. *Background*

West was charged with one count of interstate travel with intent of engaging in illicit sexual conduct with a minor. In preparation for trial, the government filed a notice of intent to call expert witness Anthony Harper, a forensic interviewer for the Children's Advocacy Services of Greater St. Louis (CASGSL), a child advocacy center (CAC). The government attached Harper's curriculum vitae (CV) to its notice. Harper's CV showed his expertise in minor sexual abuse disclosure, recanting, predatory grooming, and re-traumatization behavior. In response, West filed a motion in limine to exclude the expert testimony under Federal Rules of Evidence 702 and 403.

At the pretrial conference, the district court denied West's motion in limine to exclude Harper's testimony. It concluded that Harper's testimony "may help [the jury] better understand how trauma, especially in this case, sexual abuse, manifests itself in a child's behavior and disclosure." R. Doc. 117, at 8. It noted that Harper's testimony was "general" and would not "comment . . . on the evidence in this case or whether it happened or didn't happen but how the information typically comes out." *Id.* On balance, the court did not find Harper's testimony to be "unduly prejudicial." *Id.*

On the second day of trial, Katherine Knudsen, a CASGSL forensic interviewer, testified that she performed the CAC interview of the minor on the day of the sexual assault and three days later. In conjunction with Knudsen's testimony,

the government admitted the minor's CAC video interviews that Knudsen recorded. In the CAC interviews, the minor reported meeting West through an online social media application. On April 19, 2020, West picked up the minor and drove her to a truck stop, where he sexually assaulted her in the backseat of his vehicle. West transported the minor back to her residence after the sexual assault.

Right after Knudsen's testimony, the minor took the stand. During her testimony, the minor provided fewer details of the sexual assault and communications with West than she had previously provided to Knudsen in the CAC interviews.

Thereafter, the government called Harper as a witness. West renewed his objection to the expert testimony. The district court noted the objection but maintained its original denial. Then, upon the government's motion, the district court designated Harper "as an expert in the field of forensic interviewing, specifically dealing with child sexual assault trauma and child disclosure." R. Doc. 118, at 141. Upon questioning, Harper confirmed that he had not reviewed the evidence in the case, had never met the minor, and had not viewed the minor's CAC videos. Instead, Harper acknowledged, he was called "to testify regarding child sexual assault trauma and child disclosure." *Id.* at 142. Harper then testified about sexual abuse, trauma, re-traumatization behaviors, and the effect of predatory grooming on the memory and disclosure process.

In addition to Knudsen, the minor, and Harper, several other witnesses testified for the government. These witnesses included FBI agents who testified about the historical cell site data analysis performed on West's cell phone; a pediatric nurse at St. Louis Children's Hospital who testified that she had performed a physical exam of the minor on the day of the assault and that the minor's injuries were consistent with acute sexual assault; an FBI forensic examiner who testified about the strong connection between the DNA collected from the minor at the hospital and West's DNA; and the minor's mother who identified West and set forth a timeline of events.

-3-

West called no witnesses. The jury returned a guilty verdict.

## II. *Discussion*

On appeal, West argues that the district court abused its discretion in "permitt[ing] Anthony Harper, [a] forensic interviewer, to testify generally regarding minor victims' behavior after a traumatic event." Appellant's Br. at ix. Specifically, he maintains that Harper's testimony did not assist the trier of fact as required by Federal Rule of Evidence 702 because it impermissibly vouched for the minor's credibility and was "invalid and irrelevant" given that the minor never delayed reporting the incident and never recanted. *Id.* at 3. He also contends that Harper's testimony violated Federal Rule of Evidence 403 because its probative value was substantially outweighed by the danger of unfair prejudice resulting from Harper's bolstering of the minor's credibility.

We review for an abuse of discretion the district court's decision to permit expert testimony. *United States v. Kirkie*, 261 F.3d 761, 765 (8th Cir. 2001). Rule 702 authorizes "a district court to allow the testimony of a witness whose knowledge, skill, training, experience, or education will assist a trier of fact in understanding the evidence or to determine a fact in issue." *Id.* "In the context of child sexual abuse cases, a qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits." *Id.* (internal quotation marks omitted). But the witness "may not opine as to whether the alleged abuse actually occurred or whether the victim is telling the truth." *Id.* at 766.

We have consistently allowed the type of testimony that West challenges on appeal: an expert opinion discussing the typical behaviors of child sex-abuse victims, as long as the expert does not opine about the alleged victim's truthfulness. *See, e.g.*, *Kirkie*, 261 F.3d at 765–66; *United States v. Johns*, 15 F.3d 740, 743 (8th Cir. 1994); *United States v. Whitted*, 11 F.3d 782, 785–86 (8th Cir. 1993); *United States v. Azure*, 801 F.2d 336, 340–41 (8th Cir. 1986); *cf. United States v. Johnson*, 860 F.3d 1133,

1140 (8th Cir. 2017) ("While these cases involved sexual abuse of children, we see no reason why similar testimony should not also be considered helpful to the jury in cases where, as here, the victim of sexual abuse is an adult."). Here, the record shows that Harper testified "about the general characteristics of victims of sexual abuse," *Johnson*, 860 F.3d at 1141, and did not express any opinion on the truthfulness of the minor's testimony.

"Likewise, the expert testimony did not mislead the jury, confuse the issues, or otherwise unfairly prejudice [West] in violation of Federal Rule of Evidence 403." *Id.* Harper "did not testify as to [the minor's] behavior and did not opine as to whether [the minor] had in fact been abused." *Id.*

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____