# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-2435

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Jamie Quintana, also known as Ygnacio, | * | |
| Castro, also known as Ignacio C. Rios, | * | |
| also known as Melicio Salazar, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: **April 15, 2003**
Filed: August 25, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant-Appellant Jamie Quintana pled guilty to Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. At sentencing, the district court[1] attributed between five and fifteen kilograms to Quintana, found him

_____

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

ineligible for "safety valve" relief under U.S.S.G. § 5C1.2, and found that he was a manager or supervisor in the conspiracy. Quintana appeals these findings. We affirm.

## I.

Quintana objected to the Presentence Investigation Report (PSR) based on the drug quantity determination and the conclusion that he was ineligible for safety valve relief. He did not specifically object to the determination that he was a manager or supervisor in the conspiracy. Because he objected to the drug quantity determination, the government presented evidence regarding quantity at the sentencing hearing. Four witnesses attributed various quantities of methamphetamine to Quintana. He contends that this testimony was inadequate because it was based on memories clouded by drug use, was inconsistent, and/or was motivated by personal bias. The district court considered these arguments, noted that it was likely that at least one witness had exaggerated, and reduced the amount of drugs attributable to Quintana. The fact remains, however, that this reduced quantity still exceeded five kilograms. The district court otherwise accepted the recommendations of the PSR. Based on the PSR's recommendations, the district court sentenced Quintana to 188 months imprisonment, five years of supervised release, and a $100 special assessment.

## II.

"We review the district court's determination of drug quantity for clear error." United States v. Gonzales-Rodriguez, 239 F.3d 948, 953 (8th Cir. 2001). We "will overturn a finding of 'drug quantity only if the entire record definitively and firmly convinces us that a mistake has been made.'" Id. (quoting United States v. Granados, 202 F.3d 1025, 1028 (8th Cir. 2000)). In this case, because the quantity of drugs was established through witnesses' testimony, the issue becomes one of credibility. "It is . . . well established that in sentencing matters 'a district court's assessment of

witness credibility is quintessentially a judgment call and virtually unassailable on appeal.'" United States v. Luna, 265 F.3d 649, 652 (8th Cir. 2001) (quoting United States v. Causor-Serrato, 234 F.3d 384, 390 (8th Cir. 2000). Finding no clear error in the district court's finding, we defer to its assessment of the drug quantities.

## III.

Quintana also asserts that the district court erred in finding that he was ineligible for a reduced sentence under the safety valve provisions of U.S.S.G. § 5C1.2. The standard of review for such a finding is clear error. United States v. Tournier, 171 F.3d 645, 647 (8th Cir. 1999).

To be eligible for safety valve relief, a defendant must meet five criteria.[2] It is

---

[2]U.S.S.G. § 5C1.2 provides:

. . . in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below:

(1)     the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2)     the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)     the offense did not result in death or serious bodily injury to any person;

(4)     the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the

undisputed that Quintana met the first three criteria. At issue are the fourth and fifth criteria, namely, whether Quintana acted as a manager in the conspiracy and whether he failed to truthfully provide all the information he possessed about his offenses to the government.

Quintana maintains that he satisfied the fifth criterion by providing to the government all of the information he possessed. The district court disagreed, stating: "I think it is true that before the time of this hearing [Quintana] had not truthfully provided the government with all information that he had about it, *and I cannot accept the idea that he has provided that here at this hearing*." Quintana's claim that the district court's assessment was incorrect is "in essence an attack on the district court's credibility findings, which we review for clear error." United States v. Morones, 181 F.3d 888, 890 (8th Cir. 1999). At the sentencing hearing, Quintana's testimony directly contradicted that of several of the other witnesses who testified. Because the district court was able to directly observe each of these witnesses, we do not find that his assessment of their truthfulness was clear error. Accordingly, we affirm the denial of safety valve relief.

---

sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in Section 408 of the Controlled Substances Act; and

(5)     not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

IV.

Because we affirm the district court's finding that Quintana was not eligible for safety valve relief based on his failure to meet the fifth criterion, it is not necessary, in that context, to assess whether Quintana served as a manager in the conspiracy and thus failed to meet the fourth criterion. The finding that Quintana served as a manager is independently important, however, because it resulted in a three level increase in his base offense level.

At the sentencing hearing, one witness testified that Quintana appeared to be "partners" with Jose Ramos-Corona (a.k.a. "Teeth"), but no one stated that Quintana served in a supervisory or decision-making capacity. Thus it is not clear that the evidence presented at the hearing alone would warrant an increase in the level of Quintana's base offense. The PSR, on the other hand, states that Quintana "acted as a manager over one or more other participants in the conspiracy. He exercised decision making authority over Jose Ramos-Corona, directed the amount of drugs sold, and had money collected from drug sales turned over to him. The PSR states elsewhere that "Mr. Ramos-Corona described the defendant's role as a manager."

In general, a "presentence report is not evidence and is not a legally sufficient basis for making findings on *contested* issues of material fact." United States v. Wise, 976 F.2d 393, 404 (8th Cir. 1992) (en banc) (quoting and overruling on other grounds United States v. Streeter, 907 F.2d 781, 791-92 (8th Cir. 1990)) (emphasis added). However, "[i]n the absence of objection alerting the Court to the need for a specific finding, the Court may rely on the presentence report." Streeter, 907 F.2d at 792. Quintana did not object specifically to the finding in the PSR that he was a manager, nor did he object to those portions of the PSR which outlined the evidence that formed the basis for his sentence enhancement and denial of safety valve relief. He did, however, object generally to the conclusion in the PSR that he was ineligible for safety valve relief. Quintana asserts that this general objection served as an

objection to all of the underlying criteria for safety valve relief, including the issue of managerial role. This argument is bolstered by the fact that if Quintana had conceded that he was a manager, such a concession alone would have disqualified him from safety valve relief, rendering his general objection moot. We must determine whether Quintana's general objection was sufficient to preclude the district court's reliance on the PSR.

Objecting to the findings of a PSR puts the government on notice that it must meet an additional burden at the sentencing hearing. See U.S. v. Hammer, 3 F.3d 266, 272-73 (8th Cir. 1993):

> If a defendant objects to factual allegations in a presentence report, the Court must either state that the challenged facts will not be taken into account at sentencing, or it must make a finding on the disputed issue. See Fed.R.Crim.P. 32(c)(3)(D). If the latter course is chosen, the government must introduce evidence sufficient to convince the Court by a preponderance of the evidence that the fact in question exists.

In this case, Quintana's objection to the drug quantity determination led the government to present evidence on that issue as discussed above. Quintana's objection to the finding that he was ineligible for safety valve relief likewise put the government on notice that it would have to establish that Quintana failed to meet one of the criteria required for relief. Quintana's objection did not, however, put the government on notice that it would have to show specifically that Quintana failed to meet the managerial role criterion. Had that criterion been the only basis for denying safety valve relief, Quintana's general objection may have been sufficient.

Managerial role, however, was not the only basis for denying safety valve relief, and the course of the proceedings in this case convinces us that Quintana's objection was not sufficiently specific. In particular, we find it significant that Quintana's attorney was given numerous opportunities to contest the managerial role

criterion, but did not do so. In a telephone conference on October 31, 2001, Quintana's counsel objected to the paragraph of the PSR containing the drug quantity determination and asserted that Quintana was entitled to safety valve relief. Counsel provided no details as to why Quintana was entitled to safety valve relief. Quintana's sentencing statement contained objections to every paragraph of the sentencing report related to the drug quantity determination and stated Quintana's intent to offer testimony regarding "the five (5) elements of the United States Sentencing Commission Guidelines Rule §5C1.2". No details regarding why Quintana was eligible for safety valve relief were provided.

During direct-examination at the sentencing hearing, Quintana's counsel asked Quintana numerous questions about the quantity of drugs Quintana distributed. Counsel also asked: "Is there anything else that you've done regarding methamphetamine that you haven't talked about here this morning." This question was related to the issue of whether Quintana honestly conveyed all information he had about his crimes to the government. Counsel asked no questions as to whether Quintana served as a manager or supervisor in the drug conspiracy.

After the government's cross-examination, the court asked Quintana's counsel if he wished to re-direct. After taking a moment, counsel declined the opportunity, and the following exchange occurred:

> District Court: All right. Then I will hear you – well, let's see, is there anything you want to offer – Mr. Cruise, there also was a challenge by you with respect to the safety valve.

> Mr. Cruise: Your honor, the evidence that I would offer with respect to those things has come forward in the testimony that the defendant has given. I'll just make argument with respect to those things.

Following this exchange, Quintana's counsel did not raise the issue of managerial

role. Rather, the first time that any party discussed managerial role at the hearing was when the government stated in its closing argument: "I don't believe . . . that the defendant can possibly receive a safety valve reduction because the presentence report has adjusted . . . the offense level for his role in the offense under Section 3B1.1(b) and there's been no objection to that."  The only reply Quintana's counsel offered was the statement in closing that, "[Quintana] doesn't believe that he was an organizer or leader or manager or supervisor of others regarding the level of offense that was involved."

Finally, we are not persuaded by Quintana's argument that the government's presentation of evidence that might have indicated Quintana was a manager necessarily demonstrated that the government was on notice regarding the managerial role criterion.  In any drug conspiracy hearing, questions may be asked in an attempt to demonstrate the defendant's involvement.  Such questions do not mean that the government is attempting to prove the defendant served in a particular capacity.

Based on the general nature of Quintana's objections, and the course of the proceedings as just described, we are convinced that Quintana's objections were not sufficiently specific to preclude the district court's reliance on the PSR.  See United States v. Flores, 9 F.3d 54, 55-56 (8th Cir. 1993) (holding that a defendant's general objection to his PSR's recommendation of a sentence increase did not serve as an objection to specific factual allegations in the PSR); see also, United States v. Coleman, 132 F.3d 440, 441 (8th Cir. 1998) (holding that a defendant's argument that her PSR overstated the seriousness of her past conduct was not a sufficiently specific objection to the fact of her previous conviction).  The unobjected-to portions of the PSR contained sufficient facts from which the district court could conclude Quintana met the criterion for the managerial role adjustment.

The judgment of the district court is affirmed.

A true copy.

Attest:

              CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT