# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3569

_____

United States of America

*Plaintiff - Appellee*

v.

Cheyenne Gonzales

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: March 6, 2017
Filed: March 27, 2017
[Unpublished]

_____

Before BENTON, BEAM, and MURPHY, Circuit Judges.

_____

PER CURIAM.

Cheyenne C. Gonzales pled guilty to one count of conspiracy to distribute 500 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. He was sentenced to 204 months' imprisonment and five years' supervised release. After prison, he violated the conditions of supervised release. The district

court[1] sentenced him to an additional eight months. He appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In December 2015, Gonzales was released from prison. In violation of the conditions of supervised release, he used alcohol and submitted two diluted urine samples. He then was required to wear a drug-testing sweat patch. In July 2016, the government moved to revoke the supervised release. At a hearing, the district court declined, but ordered him, among other things, to participate in a remote-alcohol-testing program and successfully complete a substance abuse treatment program. The court warned:

> Well, Mr. Gonzales, you have not impressed me with your attitude today, and I'm going to tell you one thing, and this is not a threat. This is a warning. If your attitude continues, if you continue to drink, if you do not abide by all the rules that I have set forth and that Officer Moyle has an obligation to enforce on my behalf, then you can count on going back to prison. You are too big of a public safety risk to be in the community drinking. And I base that on your criminal history as revealed in your presentence investigation report.

In August, Gonzales met with Ashley Lagerquist, of St. Luke's Chemical Dependency Services, to discuss an intensive outpatient substance abuse treatment program. Lagerquist said he denied a substance abuse problem and admitted he would not take treatment sessions seriously. Based on his lack of motivation and potential to negatively impact other participants, Lagerquist determined he was not an appropriate candidate for the program. That same day, Gonzales submitted a late alcohol test. Two days later, his probation officer, Rhonda R. Moyle, learned that his

---

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

sweat patch from July tested positive for cocaine. He denied using any controlled substances.

The government again moved to revoke supervised release, asserting new violations: (1) failure to comply with the remote-alcohol-testing program; (2) failure to participate in a substance abuse treatment program; and (3) use of a controlled substance (cocaine). At a second revocation hearing, Gonzales challenged the second and third violations. Crediting the government's witnesses, the district court found "by a preponderance of the evidence that the violations have been established." Relying on the 18 U.S.C. § 3553(a) factors, the court revoked his supervised release, ordering eight months' imprisonment.

A court may "revoke a term of supervised release" if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). This court reviews "the decision to revoke supervised release for abuse of discretion." *United States v. Frosch*, 758 F.3d 1012, 1014 (8th Cir. 2014). "[A]s in other contexts where a district court has discretion to take certain action based on its findings of fact, the court's subsidiary factfinding as to whether or not a violation occurred is reviewed for clear error." *Id.*, *quoting United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003). "In conducting such a review, credibility determinations are 'virtually unassailable on appeal.'" *Id.*, *quoting United States v. Quintana*, 340 F.3d 700, 702 (8th Cir. 2003).

II.

Gonzales argues the district court erred in finding he failed to participate in a substance abuse treatment program because St. Luke's "would not allow him to participate" and did not offer "any alternatives." A condition of supervised release required him to participate in a substance abuse treatment program "as directed by the probation officer." At the first revocation hearing, Officer Moyle told Gonzales the

-3-

recommendation likely would require participation in an intensive outpatient program three times a week for three hours each. A few days later, he went to St. Luke's. Lagerquist testified Gonzales was "not happy" about discussing the program, denied a substance abuse problem, and said he would "talk BS" in the session and only participate "to appease the probation office." After a 35-minute assessment, Lagerquist determined that the intensive outpatient treatment program was not appropriate for him.

Gonzales claims St. Luke's should have conducted a formal intake interview. As Lagerquist testified, however, she believed a formal interview was unnecessary because of his recent and lengthy history at St. Luke's—a residential drug-abuse program while incarcerated, a transitional drug-abuse program when first released, and a 13-week cognitive behavioral thinking program in May 2016. Gonzales also believes Lagerquist and Officer Moyle failed to explore alternatives to the outpatient program. But he cites no authority requiring them to do so.

The record shows Gonzales was unwilling to participate in a substance abuse treatment program "as directed by the probation officer." Crediting Lagerquist's testimony, the district court said:

> With regard to his visit at St. Luke's, his attitude as reported by Ashley Lagerquist is totally consistent with the attitude he displayed in court on July 28, 2016. In fact, if the Eighth Circuit Court of Appeals takes that transcript, at the end of the hearing when I had given him a break and let him try to rehabilitate himself, he wanted to argue about any treatment. It was going to cost him money. He had a big fancy car but he didn't want to pay for the treatment. He didn't want to be away from his girlfriend and his work and his other personal preferences to attend treatment, so I can just see him at St. Luke's when she started talking about intensive outpatient treatment. In this particular case, Mr. Gonzales is no stranger to St. Luke's. They have worked with him in

-4-

several different programs since he's been on supervision. They know his attitude.

The district court did not clearly err in finding Gonzales violated the conditions of supervised release by failing to participate in a substance abuse treatment program.

III.

Gonzales maintains that the results from the July sweat patch are unreliable because the testing officer "admitted to removing his gloves during the process." At the second revocation hearing, the officer testified that the "standard procedure for removal of a patch" includes putting on gloves, removing tweezers from plastic, inspecting the patch, removing the overlay protecting the patch, removing the patch, placing the patch in a cellophane bag, sealing the bag, and placing the cellophane bag in a secondary bag. The officer said he usually changes gloves before placing the sealed cellophane bag in the secondary bag because of the "stickiness" on the overlay. The officer testified he wore gloves during Gonzales's patch removal for the entire time he had contact with the patch—when he removed the tweezers from the plastic, inspected the patch, removed the overlay and the patch, placed the patch in the cellophane bag, and sealed it.

Officer Moyle testified she was trained to wear gloves during the entire testing process and not to remove them at any point. Citing her testimony, Gonzales argues the patch was contaminated. However, the officer's testimony, which the district court credited, shows he changed gloves only after the patch was sealed in the cellophane bag. When the officer removed the patch, it did not have contact with anything that could compromise it. The district court found "the sweat patch protocol was substantially followed and there was nothing in the application or the removal of the sweat patch that would have caused it to test positive."

The district court did not clearly err in finding Gonzales violated the conditions of supervised release by using cocaine. *See generally **United States v. Meyer***, 483 F.3d 865, 869 (8th Cir. 2007) ("[S]weat patch results are a generally reliable method of determining whether an offender has violated a condition of his or her probation. . . . There may well be certain instances where offenders offer compelling reasons to believe that positive test results from sweat patches are erroneous. District courts should make such determinations on a case-by-case basis.").

\* \* \* \* \* \* \*

The district court did not abuse its discretion in revoking Gonzales's supervised release. The judgment is affirmed.

_____