# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-3359

———————————————

United States of America

*Plaintiff - Appellee*

v.

Michael Anthony Dock

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

——————————

Submitted: June 15, 2020
Filed: July 31, 2020

——————————

Before LOKEN, ARNOLD, and GRASZ, Circuit Judges.

——————————

ARNOLD, Circuit Judge.

Juli Firestine called 911 early one morning to report that her roommate's boyfriend, Michael Dock, had beaten on the backdoor of her home and had fired a gun. When responding police officers arrested Dock, they discovered a .45 caliber pistol nearby. He later pleaded guilty to being a felon in possession of a firearm. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). Dock objected to a statement in his presentence

investigation report that he had fired the gun but at his sentencing hearing the district court[1] heard evidence and determined that Dock had indeed done so. The district court sentenced Dock to eight years in prison.

Dock maintains on appeal that the district court clearly erred in finding that he shot the gun. Though all agree that the finding did not affect Dock's recommended Sentencing Guidelines range, Dock contends that it influenced the district court's decision to sentence him to eight years in prison rather than to some lesser term. It is a procedural error for a district court to select a sentence based on clearly erroneous facts. *See United States v. Cottrell*, 853 F.3d 459, 462 (8th Cir. 2017).

The evidence that Dock fired the weapon was not overwhelming. The only unequivocal evidence that supports the finding comes from Firestine's adamant and consistent statements that the "pop" she heard was a gunshot. The government presented evidence that she said as much during her 911 call, during her discussions with officers who responded to the scene, and during her grand jury testimony weeks after the event. We have listened to these conversations and have read the transcript of her grand-jury testimony, and Firestine's account has an air of unwavering certainty.

The government asserts that other evidence supports its view, but we find this evidence of questionable weight. First, the government offered the grand jury testimony of a detective who reviewed security camera footage of Firestine's house that showed that Dock retrieved a gun from a car, tucked it into his waistband, walked around to the back of the house and out of the camera's view, and then walked back into view with the gun in his hand. But Dock concedes that he had the firearm when

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

he was at the house. He says he just used the gun to pound on the backdoor. So the video would seem to corroborate Dock's account as much as it would Firestine's.

The government also points out that the gun Dock possessed contained only ten of a possible eleven bullets, suggesting, it says, that Dock had fired off one round. But without evidence that Dock, or gun possessors in general, tend to carry guns with both a bullet in the chamber and the maximum number of bullets in the magazine, we think it just as likely that Dock had loaded an empty gun and chambered the first round. If that's what he did, that would explain why there were only ten bullets in the gun without him firing a shot. We therefore don't afford much weight to the government's missing-bullet argument.

Other circumstances suggest that Dock might not have fired the gun. No one ever found a shell casing on the snow-packed ground or a bullet hole in the house. When officers spoke to Dock's girlfriend, she suggested that the noise might simply have been from a rock hitting against the door, though she did not seem very confident about that. When officers spoke to Firestine, she told them that "they" thought the noise was a rock. It's unclear who "they" were, though it seems likely she was referring to two or more of the other people present in the house. Since the record does not contain statements from anyone else at the scene, though, we are left to speculate as to how many people thought the noise could be attributed to something other than a gunshot. The final indication that the noise in question was not a gunshot is that, when responding officers spoke to Firestine, she said more than once that the shot sounded like it came from a .22 caliber gun, when in fact Dock's gun was a .45 caliber. The district court said that it was "very familiar" with these particular kinds of guns "having fired both many, many, many times," and acknowledged that they make different noises when they go off.

In short, we share some of Dock's concerns about the state of the record. But our job is not to act as a factfinder: We simply decide whether the factual finding that

the district court made, based on the preponderance of the evidence, was clearly erroneous. *See United States v. Luscombe*, 950 F.3d 1021, 1031 (8th Cir. 2020). A factual finding is clearly erroneous "when we are left with the definite and firm conviction that a mistake has been committed." *See United States v. Brockman*, 924 F.3d 988, 994 (8th Cir. 2019). We are not left with any such conviction. The weightiest evidence that Dock fired the gun is Firestine's adamant, consistent account. It's true that she may have been mistaken, but we cannot say that the district court clearly erred in crediting her account in the circumstances. The record does not refute her account or otherwise offer anything other than emanations of uncertainty, which is not enough to reverse the finding under our standard of review.

Affirmed.

_____