# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3336
_____

United States of America

*Plaintiff - Appellee*

v.

Zachary Michael Anderson Wailes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: April 11, 2022
Filed: August 12, 2022

_____

Before LOKEN, ARNOLD, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

Zachary Wailes pleaded guilty to bank robbery. 18 U.S.C. § 2113(a). The presentence investigation report (PSR) recommended applying a five-level sentencing enhancement for possessing or brandishing a firearm during the robbery. USSG

§ 2B3.1(b)(2)(C). Overruling Wailes's objection, the district court[1] found the Government proved there was a firearm involved by a preponderance of the evidence. The five-level firearm enhancement resulted in an advisory guidelines sentencing range of 100 to 125 months' imprisonment. The court after considering the 18 U.S.C. § 3553(a) sentencing factors imposed a 100-month sentence. Wailes appeals, arguing the district court committed clear error when it imposed the five-level firearm enhancement. We affirm.

## I. Background

On the morning of February 25, 2021, Wailes entered the Peoples Bank in Scranton, Iowa wearing a dark hooded sweatshirt, dark sunglasses, and a mask. He approached the three bank tellers -- C.W., P.H., and J.E. -- and ordered each to put the money from her teller drawer into his bag. Wailes left the bank with $19,157. He was arrested two days later and ultimately pleaded guilty to bank robbery.

Six weeks after the robbery, the three tellers were interviewed by local law enforcement. C.W. told police she observed the handle of a small, black handgun in Wailes's right pocket and that he briefly grabbed the gun when commanding her to put the money in the bag. Neither of the other two tellers saw a gun, but P.H. stated that Wailes kept his hand in his right pocket, and J.E. said there was something weighing down Wailes's right pocket. Paragraphs 8 and 9 of the PSR recounted these facts. Wailes objected to C.W.'s assertion in Paragraph 8, noting "[t]he surveillance video of the incident does not appear to support this assertion" and C.W.'s interview "occurred a significant time after the robbery." Wailes objected to J.E.'s assertion in Paragraph 9 "that Mr. Wailes' pocket appeared weighted down."

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

At sentencing, the tellers did not testify. The government introduced audio recordings of their law enforcement interviews, as well as a video of the robbery taken by the bank's security cameras, still frames from that video, and testimony by FBI Special Agent Dave Warren, who investigated the robbery. Wailes introduced Suspect Identification Profile forms completed by the tellers on the day of the robbery in which they did not report the presence of a weapon. Wailes also elicited testimony that C.W., the only teller who reported seeing Wailes with a gun, resigned from the bank the day before the sentencing hearing after admitting she took $2,800 from the bank between August and September 2021 that she later repaid. Special Agent Warren testified that the purpose of the Profile forms was to get a physical description of the suspect "out as quickly as possible to law enforcement officers in the area."

The Guidelines provide that the base offense level for Robbery is increased by five levels "if a firearm was brandished or possessed." USSG § 2B3.1(b)(2)(C). A firearm is "brandished" if "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether [it] was directly visible." USSG § 1B1.1 comment. n.1(C). Wailes argued to the district court that the government failed to prove this special offense characteristic applies because the government relied on hearsay statements made by C.W. to a law enforcement officer almost six weeks after the robbery occurred; C.W.'s earlier inconsistent Suspect Identification Profile form and recent resignation are "credibility issues;" the security video does not support C.W.'s statements; the other tellers did not see Wailes carrying a gun; and tellers are trained to "assume that someone who is robbing a bank has a firearm."

After hearing argument by the government that the evidence was sufficient to support the five-level enhancement, the district court found that:

> the Government has proven that there was a firearm involved. It's not beyond a reasonable doubt, but this is preponderance of the evidence.

The Court has relied on . . . the statements of P.H., [J.E.], and C.W. . . . [C.W.] made these statements before any allegation that she was dishonest. . . . Let's assume for a moment that C.W. is incorrect. I still have the other two, and I'm going on their statements . . . . Additionally, . . . [C.W.'s] written statement [] said that her husband's family is familiar with firearms; . . . she was . . . closer to [Wailes] than the others.

## II. Analysis

On appeal, Wailes argues the district court erred in imposing the five-level enhancement because the government, by relying on "uncorroborated, unreliable hearsay statements," failed to prove that Wailes possessed a firearm during the bank robbery. "We review the factual bases of a district court's sentencing enhancements for clear error, and give due deference to the district court's application of the Guidelines to the facts." United States v. Hoelzer, 183 F.3d 880, 882 (8th Cir. 1999).

A district court may rely on hearsay evidence in resolving sentencing issues so long as the evidence has "sufficient indicia of reliability to support its probable accuracy." Id., quoting USSG § 6A1.3(a). When the government urges a sentence enhancement, and its evidence in support includes a crime victim's hearsay statements to law enforcement investigators, the district court may consider that evidence "if sufficiently reliable reasons demonstrate the testimony is probably accurate," a determination "committed to the sound discretion of the district court." United States v. Woods, 596 F.3d 445, 448 (8th Cir. 2010) (quotation omitted). Of course, the ultimate finding that the government proved the enhancement by a preponderance of the evidence is reviewed for clear error. "A factual finding is clearly erroneous when we are left with the definite and firm conviction that a mistake has been committed." United States v. Dock, 967 F.3d 903, 905 (8th Cir. 2020) (quotation omitted).

The determination of whether hearsay testimony is probably accurate and therefore sufficiently reliable turns on "factors such as the consistency of the hearsay testimony, the timing and nature of the declarant's statements, and the witness's impressions of the declarant's demeanor, as well as other corroborating evidence." United States v. Sheridan, 859 F.3d 579, 583-84 (8th Cir. 2017), and cases cited. Here, the district court expressly relied on the recorded interviews of all three bank tellers. Wailes focuses his argument on appeal almost entirely on C.W.'s statements that she saw the handle of a gun in Wailes's pocket and he briefly grabbed the gun handle when demanding she hand over the money in her drawer.

Wailes argues that C.W.'s hearsay was insufficiently reliable because she completed an inconsistent Suspect Identification Profile form after the robbery; C.W. was the only teller who said she saw a gun; the security camera video did not show a gun and showed that C.W.'s observations of Wailes were limited; C.W.'s credibility was weak because she resigned from the bank after embezzling; and the government did not sufficiently corroborate her statements.

We agree with the district court that C.W.'s statements were not wholly uncorroborated. The bank security camera footage is consistent with C.W.'s description of the robbery. Wailes's right side was largely obscured in the video, but it shows that C.W., the teller at the station closest to the door, had the best view of Wailes, was the first teller he approached, and had a direct line of sight to his waist while she loaded his bag with cash. Nor did C.W.'s statements lack indicia of reliability. She provided details about the firearm, describing it as a black handgun with a "smaller grip and handle" and "a little bit of texture." The reliability of this description was bolstered by C.W.'s personal experience with guns, including a permit to carry and knowledge through her husband's family. Cf. United States v. Gleason, 25 F.3d 605, 609 (8th Cir.), cert. denied, 513 U.S. 911 (1994).

Wailes's argument also gives insufficient attention to the hearsay statements of the other two tellers, simply dismissing J.E.'s statement because it "does not corroborate C.W." The district court expressly relied on the statements of all three tellers. The above-quoted Guidelines definition of "brandished" -- which USSG § 2B3.1(b)(3)(C) presents as an alternative way to come within its purview -- perfectly describes the way Wailes intimidated these tellers into believing he had a gun that was not directly visible so they would empty the cash in their drawers into his bag. Although, as the Guidelines definition makes clear, "the weapon must be present," the statements of P.H. and J.E. were more than merely insufficient corroboration of C.W. And their statements aligned with C.W.'s account of the robbery, including Wailes's appearance.

Wailes's evidence failed to undermine C.W.'s interview statements. First, Wailes asserts that a local police report (not in the record) inconsistently stated that a bank teller said "she observed a firearm in Wailes's bag." But Agent Warren testified that the report said "bank staff" reported seeing a gun in Wailes's bag, not a teller, so the report was not inconsistent with the bank teller interviews. Agent Warren's testimony also explained that C.W.'s Suspect Identification Profile form was not intended to provide a comprehensive description of the robbery, so the omission of a reference to seeing a gun handle did not necessarily contradict her subsequent interview statements. Finally, as the district court observed, C.W.'s interview statements were made months before she improperly took money from the bank and resigned.

After careful review of the record, we conclude the district court did not abuse its discretion in considering the tellers' interview testimony after concluding that the "statements, though hearsay, were made under circumstances indicating sufficient reliability." United States v. Clark, 932 F.3d 1064, 1067 (8th Cir. 2019). Nor did the court clearly err in finding by a preponderance of the evidence that Wailes brandished or possessed a firearm during the robbery. The tellers' testimony was strong but not

necessarily conclusive evidence on this issue, and the security video did not eliminate uncertainty as to the presence of a firearm. "But our job is not to act as a factfinder," and therefore "emanations of uncertainty [are] not enough to reverse the [district court's] finding under our standard of review." Dock, 967 F.3d at 904-05.

The judgment of the district court is affirmed.

_____