# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3573
_____

United States of America

*Plaintiff - Appellee*

v.

Kenneth W. Blair

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: October 18, 2023
Filed: February 23, 2024

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

A jury found Kenneth Blair guilty of possessing with intent to distribute and distributing methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1). The district court[1] sentenced him to 292 months in prison. Blair appeals, challenging the denial of two

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

pre-trial motions, refusal to acquit him on both counts, and calculation of drug quantities for sentencing. We affirm.

I.

Blair's troubles began with another man's arrest outside a Mexican restaurant in Lincoln, Nebraska. Police found the remnants of a recent half-pound meth deal in the man's car. Staring down the barrel of another drug charge, he flipped on his source and agreed to become a confidential informant. The now-CI told the police that he regularly bought meth from someone called "Fats," whom he later confirmed was Blair. The controlled interactions that followed ended with Blair's arrest and conviction.

The CI said that he regularly met Blair at a parking lot in a sprawling Omaha apartment complex to buy meth. While preparing for a controlled meeting in Lincoln, police learned that Blair drove a Lexus registered to a woman who lived in the complex.

Investigators set up a controlled buy. As the CI travelled to Omaha, a detective watched the woman's apartment. He saw Blair drive up in the Lexus, enter the apartment, and leave with a grocery bag. Blair drove to the parking lot and waited until the CI and an undercover officer arrived. Wearing a wire, the CI got in the Lexus, gave Blair $1,000 in marked buy money, and returned with the grocery bag. Inside was about two pounds of meth.

With a successful buy and multiple informants pointing to Blair as their supplier, police got a warrant to search the Omaha apartment and had the CI arrange another buy. Only this time, when Blair got to the apartment to get the goods, he was arrested. The search turned up about five pounds of meth in the master bedroom along with drug paraphernalia and over $19,000 cash, including all the buy money.

Blair was indicted on two gun and two drug charges. The jury acquitted him of the gun charges. But it convicted him of the drug charges: first, for possessing with intent to distribute less than 50 grams of meth seized in the Omaha apartment; and second, for distributing the meth sold in the controlled buy. Blair now claims error at each stage of his criminal proceedings.

## II.

We start with the district court's denial of two pre-trial motions. The court refused to compel disclosure of the CI's identity, adopting the magistrate judge's[2] finding that Blair had not overcome the Government's privilege. It also denied his untimely motion for a *Franks* hearing to challenge the warrant's validity. *See Franks v. Delaware*, 438 U.S. 154, 171–72 (1978). We review for abuse of discretion. *United States v. Oliver*, 950 F.3d 556, 562 (8th Cir. 2020) (disclosure); *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (*Franks* hearing).

## A.

The Government enjoys a limited privilege to keep its informants' identities confidential, one that yields to a defendant's showing that disclosure is "relevant and helpful" to his defense or is "essential to a fair determination" of his case. *Roviaro v. United States*, 353 U.S. 53, 59–61 (1957). To make that showing, a defendant must establish "beyond mere speculation" that the informant's testimony is material. *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991).

We do not address whether Blair carried his burden. Even if we agreed that the CI's identity should have been disclosed, Blair has suffered no material prejudice from the Government's initial withholding. *See United States v. Woods*, 486 F.2d 172, 174 (8th Cir. 1973).

---

[2]The Honorable Cheryl R. Zwart, United States Magistrate Judge for the District of Nebraska, now retired.

Blair concedes that he learned the CI's identity at least two months before trial, and the record shows that this later-than-liked disclosure did not leave him unable to prepare a defense. Without objection, the district court briefly delayed the CI's testimony so Blair could review what he claimed was new evidence. And once he took the stand, Blair cross-examined him about the issues raised on appeal: his motives, credibility, and relationship with Blair. *See United States v. Roell*, 487 F.2d 395, 398–99 (8th Cir. 1973). Nothing suggests that Blair "would have done anything different to affect the result at trial had an earlier disclosure been made." *United States v. Foster*, 815 F.2d 1200, 1203 (8th Cir. 1987). Any abuse of discretion was harmless.[3]

## B.

And we do not think that the court abused its discretion by denying a *Franks* hearing. To get one, Blair had to make a "substantial preliminary showing" that the warrant affidavit contained an "intentional or reckless false statement or omission which was necessary to the finding of probable cause," a requirement "not easily met." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008) (citation omitted).

At the heart of his challenge lie just two statements suggesting that he had an apartment in the same complex where he sold meth. Blair says that the affidavit falsely attributed the statements to the CI and that without them, nothing linked him to the Omaha apartment. But other information independently linked him to the apartment. Blair was on a utility account for the unit and drove a car registered at the address. And police saw him enter the apartment to pick up the drugs that he

---

[3]We have not always been consistent in how we talk about the effect of subsequent disclosure. *Compare Woods*, 486 F.2d at 174 (assuming without deciding error and finding no prejudice), *with Foster*, 815 F.2d at 1203 (finding that defendant "was not harmed by" a delayed disclosure and concluding that "the district court did not err in declining to permit an earlier disclosure"), *and United States v. Rodrequez*, 859 F.2d 1321, 1326 (8th Cir. 1988) (finding no error in refusal to order disclosure where defendant was not prejudiced). We adopt the earliest framing: harmlessness. *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

sold to the CI. Excised of the contested statements, the affidavit still established "a fair probability that contraband or evidence of a crime [would] be found" in the apartment. *Illinois v. Gates*, 462 U.S. 231, 238 (1983).

## III.

Blair next challenges the district court's denial of his motion for judgment of acquittal, arguing that the evidence was insufficient to support his two drug convictions. We review *de novo*, viewing the evidence in the light most favorable to the Government, resolving conflicts in its favor, and accepting all reasonable inferences that support the verdict. *United States v. Maurstad*, 35 F.4th 1139, 1144 (8th Cir. 2022). Our standard is "quite strict," and we will not disturb the verdict unless "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Wright*, 739 F.3d 1160, 1167 (8th Cir. 2014) (citation omitted).

## A.

To convict Blair of possessing with intent to distribute, the Government needed to prove that (1) he knowingly possessed, actually or constructively, the meth found in the Omaha apartment and (2) he intended to distribute it. *Id.* at 1167–68. Blair questions whether the Government established the first element on its theory that he had dominion over the apartment. Dominion over the premises where contraband is concealed establishes constructive possession, which may be exclusive or joint. *Id.* at 1168–69. But since the evidence indicates that Blair jointly occupied the apartment, the Government must offer something more to secure his conviction: some "additional nexus linking [him] to the contraband." *Id.* at 1168.

Ample evidence proved joint constructive possession. Blair traveled often to Omaha, he drove the leaseholder's car, his name was on a utility account, and a power bill addressed to him was in the entryway. His conduct before the buy suggested that he used the space to store meth, and he was arrested just outside

before he could make another sale.  The evidence also linked Blair to the meth itself.  Next to the bed in the master bedroom, investigators found mail addressed only to Blair atop roughly a pound of meth.  And in a nearby dresser, they found the buy money and thousands of dollars more, "indicative of illegal narcotic sales."  *See id.* at 1169 (concluding that access to the space where drugs were found and evidence of narcotic sales established at least joint constructive possession); *United States v. White*, 962 F.3d 1052, 1056 (8th Cir. 2020) (same).

Blair says the jury needed more:  keys, fingerprints, and other Government nice-to-haves.  But our role is to uphold the verdict "[a]s long as one theory based on the evidence presented" could support a conviction, *United States v. Druger*, 920 F.3d 567, 569 (8th Cir. 2019), not to determine whether the Government presented the strongest case possible.

## B.

Blair also attacks his conviction for distributing, which requires proof that he "knowingly sold or otherwise transferred methamphetamine."  *United States v. Garcia*, 646 F.3d 1061, 1066 (8th Cir. 2011).  He argues that no reasonable jury could find him guilty because the evidence did not show him handing over the drugs and the CI's wire did not pick up the magic words "drugs" or "meth."  We disagree.

The CI testified that Blair handed him the meth and that he gave Blair the money—direct evidence the jury could accept.  *See United States v. Smith*, 4 F.4th 679, 687 (8th Cir. 2021) ("Credibility determinations are uniquely within the province of the trier of fact[] and are entitled to special deference."  (citation omitted)).  Circumstantial evidence, which is "treated no differently," supported the CI's version of events.  *See United States v. King*, 898 F.3d 797, 808 (8th Cir. 2018) (citation omitted).  Investigators searched the CI before and after the transaction and monitored the exchange.  When he rejoined the undercover officer after a few minutes in the Lexus, he was $1,000 poorer and had a grocery bag filled with meth.  It was no great inferential leap that the sale occurred in that time.  *See United States*

*v. Sturdivant*, 513 F.3d 795, 800–01 (8th Cir. 2008) (sustaining conviction for drug distribution under similar circumstances).

All told, a reasonable jury could find Blair guilty beyond a reasonable doubt of the drug charges. His convictions stand.

## IV.

Finally, Blair challenges the district court's drug quantity calculation for sentencing, which we review for clear error. *United States v. Maxwell*, 61 F.4th 549, 560 (8th Cir. 2023). He argues that the court should not have relied on testimony from the CI and a cooperating witness to determine uncharged drug quantities. The issue is one of credibility, *United States v. Quintana*, 340 F.3d 700, 702 (8th Cir. 2003), and Blair says these witnesses are no good—they're "known liars, drug users, and drug dealers." Maybe so, but the court was free to credit their testimony all the same. *See id.* ("[A] district court's assessment of witness credibility [in sentencing matters] is quintessentially a judgment call and virtually unassailable on appeal." (citation omitted)).

## V.

We affirm the district court's judgment.

_____