# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2188

_____

United States of America

*Plaintiff - Appellee*

v.

Robert Nicholas Hansen

*Defendant - Appellant*

_____

No. 23-2189

_____

United States of America

*Plaintiff - Appellee*

v.

Robert Nicholas Hansen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western

_____

Submitted: January 9, 2024
Filed: August 1, 2024

_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Two juries convicted Robert Hansen of several gun and drug crimes. The district court[1] sentenced him to 300 months in prison in the first case and 120 months in the second, to run concurrently. He appeals, asking us to set aside both verdicts and vacate his sentences. We affirm.

I.

The factual and procedural background in this consolidated appeal is complex. Our summary of the relevant facts includes three controlled buys, two confidential informants (CIs), several search warrants executed at three different locations, numerous guns, a couple indictments, and three trials.

We start with the controlled buys. On November 23, the CIs went to Hansen's garage to buy a half-pound of meth. Things didn't go as planned. Hansen accidentally handed them a box of cash instead of drugs, so later that day, one of the CIs met up with Hansen to exchange the cash for the drugs. On December 8, the CIs went back to Hansen's garage to buy another half-pound of meth. Hansen handed them the drugs this time, but much to the investigators' dismay, one of the CIs used meth during the buy. With that CI sidelined, the other went to Hansen's garage alone on January 7 and bought a final half-pound of meth.

Next, the warrants. After learning that Hansen was storing meth at David Recker's farm and guns at Jason Blau's house, investigators secured search warrants for both locations, plus Hansen's house. At Hansen's house, investigators found a DPMS rifle hidden behind some sheetrock, drug and drug-distribution

_____

[1]The Honorable Leonard T. Strand, then Chief Judge, United States District Court for the Northern District of Iowa.

paraphernalia, and personal use quantities of meth.  They also found meth in Recker's farmhouse.  Recker later testified that Hansen had given him the drugs and that he allowed Hansen to store things at his farm in exchange for user quantities of meth.  Finally, investigators found a cache of 17 guns, including a Del-Ton rifle, in Blau's bedroom.  They were familiar with the Del-Ton:  several years earlier, police found ammunition; two AR-style rifles, including the Del-Ton; and three handguns in a small shed on a farmstead owned by Zelda Sherlock.  They had returned the Del-Ton to Blau, its original purchaser.  Both Zelda's son and Blau testified that Hansen had asked them to store the guns for him.

The investigation led to two indictments.  The first charged Hansen with conspiring to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846; possessing with intent to distribute methamphetamine, § 841(a)(1), (b)(1)(A); distributing methamphetamine near a protected location (one count for each controlled buy), §§ 841(a)(1), (b)(1)(B), 860(a); and being a felon and unlawful drug user in possession of four guns, including the DPMS rifle, 18 U.S.C. §§ 922(g)(1), (g)(3), 924(a)(2).

The jury convicted Hansen of all the drug charges except for possessing with intent to distribute methamphetamine.  It also convicted him of unlawfully possessing the DPMS rifle—but not the other three guns charged in the indictment.  After the district court ordered a new trial because of juror misconduct, Hansen was retried for everything but the acquitted charge and guns from the first trial.  This time, the jury convicted him of all charges except for one count of distributing methamphetamine—the first controlled buy where Hansen accidentally handed the CIs a box of cash.  So when the dust settled after the two trials in the first case, Hansen was guilty of conspiring to distribute methamphetamine, two counts of distributing methamphetamine near a protected location, and unlawfully possessing the DPMS rifle.

The second indictment charged two counts of being a felon and unlawful drug user in possession of firearms.  The first count was based on the 5 guns from

the Sherlock farm and the second on the 17 guns from Blau's house. A jury convicted Hansen of both counts, finding that he had unlawfully possessed all the guns from Blau's house but only one from the Sherlock farm: the Del-Ton rifle purchased by Blau and later found in his bedroom.

## II.

While the factual background of this case is complex, the legal arguments on appeal are straightforward. Hansen argues that there is insufficient evidence to support his convictions in both cases. He also argues that the district court plainly erred in the first case by not giving the jury a special interrogatory and that counsel was ineffective. In the second case, he argues that the court abused its discretion by admitting part of Blau's testimony under Federal Rule of Evidence 404(b) and by denying his motion for a new trial. Finally, he challenges his sentences.

## A.

At the close of the Government's cases in both trials, Hansen moved for judgment of acquittal on all charges based on insufficient evidence. We review the district court's denial of these motions *de novo*, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor. *United States v. Blair*, 93 F.4th 1080, 1085 (8th Cir. 2024). Hansen's convictions stand unless no reasonable jury could have found him guilty beyond a reasonable doubt. *Id.*

Hansen's attacks on the sufficiency of the evidence boil down to one argument: the juries could not credit the cooperating witnesses who testified against him because they were known liars who had every motivation to fabricate their testimony in the hope of receiving lesser sentences. But we are not in the business of second-guessing a jury's credibility determinations. *United States v. Keepseagle*, 30 F.4th 802, 813 (8th Cir. 2022). It was up to both juries whether to credit those witnesses, notwithstanding their personal histories and incentives to

lie, and Hansen has shown no reason to disturb their decisions. *See United States v. Watley*, 46 F.4th 707, 716 (8th Cir. 2022) (deferring to the jury's credibility determination because defendant failed to show that the witness's testimony was facially implausible). And he does not argue that the witnesses' testimony *if credible* was insufficient to convict him. *See United States v. Pao Xiong*, 774 F. App'x 994, 996 (8th Cir. 2019) (per curiam). The juries' verdicts stand.

B.

Hansen claims next that the district court plainly erred at the retrial in the first case by failing to include in the verdict form a special interrogatory for the gun possession charge (Count 6). The verdict form asked the jury whether Hansen was guilty of possessing the firearm charged in Count 6 and whether he was a drug user and/or felon. What was missing, he says, is a special interrogatory asking the jury whether the gun was the DPMS rifle—the only one left after the first trial.

The Government argues that Hansen waived this claim of error because the parties jointly proposed the verdict form for Count 6. Having carefully reviewed the record, it is unclear whether that is true, so we review for plain error. *See United States v. Smith*, 910 F.3d 1047, 1052 (8th Cir. 2018) (reviewing for plain error where the defendant failed to object to the verdict form at trial). To win on plain error review, Hansen must show (1) "an error," (2) "that is clear or obvious," (3) "that affected [his] substantial rights," and (4) that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Helper*, 7 F.4th 706, 711 (8th Cir. 2021) (citation omitted).

We see no error, plain or otherwise, because the jury instructions and verdict form, taken as a whole, adequately informed the jury that it needed to find that Hansen unlawfully possessed the DPMS rifle to convict him on Count 6. *See United States v. Brown*, 330 F.3d 1073, 1077–78 (8th Cir. 2003) (viewing the jury instructions and verdict form as a whole). The verdict form asked whether Hansen was guilty or not guilty of being a prohibited person in possession of a firearm as

"charged in Count 6 of the Indictment" and "explained in Instruction No. 9." Instruction No. 9 made clear that the only firearm at issue was the DPMS rifle. Viewing the instructions as a whole, we are confident that the jury understood that to find him guilty, it had to find that he possessed the DPMS rifle and not one of the other guns listed in the indictment.[2]

## C.

Moving to the second case, Hansen argues that the district court abused its discretion by allowing Blau to testify that Hansen had stored meth at his house. Because he was on trial for only two counts of unlawful gun possession, Hansen says that this testimony unfairly branded him as a drug dealer. The district court admitted the testimony under Federal Rule of Evidence 404(b), a decision we review for abuse of discretion. *United States v. Proto*, 91 F.4th 929, 931 (8th Cir. 2024).

Rule 404(b) is a "rule of inclusion," allowing evidence of a bad act "unless it tends to prove only the defendant's criminal disposition." *United States v. Mothershed*, 859 F.2d 585, 589 (8th Cir. 1988) (citation omitted). Evidence may be admitted under the rule "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). It must be "(1) relevant to a material issue, (2) similar in kind and not overly remote in time to the crime charged, (3) supported by sufficient evidence to support a jury finding that the defendant

---

[2]Hansen argues that counsel was ineffective for failing to raise this claim below, file a post-judgment motion for a new trial and judgment of acquittal, and renew his hearsay objections at sentencing. Ineffective assistance claims are "usually best litigated in collateral proceedings." *United States v. Ramirez–Hernandez*, 449 F.3d 824, 826–27 (8th Cir. 2006). This case is no exception. *See id.* at 827 ("We will consider ineffective-assistance claims on direct appeal only where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent.").

committed the prior act, and (4) of probative value not substantially outweighed by its prejudicial effect." *Proto*, 91 F.4th at 932.

First, Hansen's storage of meth at Blau's house is relevant to whether Hansen also possessed the guns found there. By pleading not guilty, Hansen put every element of the charged crimes at issue—including that he knowingly possessed the guns. *United States v. Oaks*, 606 F.3d 530, 539 (8th Cir. 2010). Storing meth at Blau's house makes it more likely that he also stored guns there and thus knowingly possessed the ones charged. *See United States v. Brandon*, 64 F.4th 1009, 1021 (8th Cir. 2023) ("[E]vidence of past crimes can be probative of a defendant's intent to commit a similar act." (citation omitted)); *United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014) ("knowing possession" can be proven by showing constructive possession, and "knowledge of a firearm's presence, combined with control is constructive possession" (cleaned up) (citation omitted)).

Second, Hansen's storage of meth at Blau's house is similar in kind and close in time to the charged crimes. They're the "same scenario": Hansen storing contraband at someone else's house. *See Proto*, 91 F.4th at 932. And it occurred within months of his storing guns at the Sherlock farm and a few years of his storing guns at Blau's house. *See United States v. Johnson*, 860 F.3d 1133, 1142 (8th Cir. 2017) (stating convictions "eight to ten years" before the case are "sufficiently close in time" to the charged crimes).

Third, Blau's testimony "by itself" was sufficient to support a finding that Hansen stored meth at his house. *Id.* at 1143. And finally, the probative value of this evidence was not substantially outweighed by its prejudicial effect. The evidence was at least somewhat probative of a material issue—his knowing possession of the charged guns—and the district court diminished the danger of unfair prejudice by giving a limiting instruction on how the jury could use it. *See Proto*, 91 F.4th at 932.

Because Hansen's storage of meth at Blau's house was not "clearly" irrelevant and "introduced solely to prove [his] propensity to commit criminal acts," the district court did not abuse its discretion. *See United States v. Littlewind*, 595 F.3d 876, 881 (8th Cir. 2010) (citation omitted).

Wrapping his Rule 404(b) claim in different garb, Hansen argues that the unfair prejudice of being branded a drug dealer was so great that he deserves a new trial. The district court may, on the defendant's motion, "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 relief is strong medicine that should be dispensed sparingly. *United States v. Harriman*, 970 F.3d 1048, 1058 (8th Cir. 2020). In evaluating a motion for Rule 33 relief, the "court may weigh the evidence, disbelieve witnesses, and grant a new trial" when the "evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." *Id.* (cleaned up) (citation omitted). We review the denial of a motion for a new trial "for a clear abuse of discretion, a rigorous standard." *United States v. Rubashkin*, 655 F.3d 849, 857 (8th Cir. 2011).

For starters, we presume that the jury followed the district court's limiting instruction, *United States v. Joiner*, 39 F.4th 1003, 1011 (8th Cir. 2022), and did not convict Hansen for improper reasons. He says that he can prove otherwise: the jury acquitted him of unlawfully possessing a rifle at the Sherlock farm that had his fingerprint on it yet convicted him of possessing the Del-Ton rifle. But we see no inconsistency in the verdict. After all, the jury convicted him of unlawfully possessing every gun connected to him and Blau—the guns from Blau's house and the Del-Ton rifle from the Sherlock farm that Blau had purchased.

The evidence that Hansen stored meth at Blau's house was prejudicial in the sense that it tended to show that he had knowingly possessed the guns found there, that much is true. *See United States v. Crow Ghost*, 79 F.4th 927, 935 (8th Cir. 2023) ("Damaging evidence is always prejudicial[.]"). But it was not *unfairly* prejudicial, *see United States v. Parker*, 871 F.3d 590, 600 (8th Cir. 2017), let

alone so unfairly prejudicial that a miscarriage of justice occurred and a new trial was warranted.

D.

We end with sentencing. Hansen was on the hook for 90 kilograms or more of converted drug weight. Among other enhancements, he received two offense levels for using violence by pistol whipping someone who owed him a drug debt and three levels for having a managerial or supervisory role. The district court varied down from his Guidelines range of life in prison and sentenced him to 300 months in the first case and 120 months in the second, to run concurrently.

Hansen argues that the drug quantity finding and use-of-violence enhancement rest on shaky foundations: the hearsay statements of three cooperating witnesses. We review the district court's factual findings for clear error and its application of the Guidelines *de novo*. *United States v. LaRoche*, 83 F.4th 682, 692 (8th Cir. 2023).

Hearsay is admissible at sentencing so long as it has "sufficient indicia of reliability." *United States v. Schlosser*, 558 F.3d 736, 740 (8th Cir. 2009) (citation omitted). Whether hearsay is sufficiently reliable "turns on factors such as the consistency of the hearsay testimony, the timing and nature of the declarant's statements, and the witness's impressions of the declarant's demeanor, as well as other corroborating evidence." *United States v. Wailes*, 44 F.4th 823, 826–27 (8th Cir. 2022) (cleaned up) (citation omitted). Instead of arguing that the hearsay at issue lacked sufficient indicia of reliability, Hansen shifts to the Constitution: he argues that the district court could not rely on those statements because the declarants never appeared or faced cross examination. But there's "no constitutional right to confront witnesses during sentencing," *United States v. Jokhoo*, 806 F.3d 1137, 1141 (8th Cir. 2015), and it's well-settled that sentencing courts may rely on hearsay to resolve disputed facts, *e.g.*, *Wailes*, 44 F.4th at 826.

-9-

Finally, Hansen claims that there is insufficient evidence to support the managerial or supervisory role enhancement for the same reason that there was insufficient evidence to convict him of any drug trafficking crime—there was no credible testimony against him. Because we have already rejected that argument, this claim fails.

## III.

We affirm the district court's judgments.

_____